# Smethport Railroad Company *v.* Pittsburg, Shawmut & Northern Railroad Company, Appellant.

*Railroads—Crossings—Equity—Act of June* 19, 1871, *P. L.* 1361.

A railroad company has a constitutional right with its road to cross the existing railroad of another company, subject, however, within the exercise of its right, to the control of a court of equity under the provisions of the Act of June 19, 1871, P. L. 1361. The rights of the first occupant of the ground are superior to the new claimant. In measuring the extent of the rights of the older company, there must be a liberal consideration for the future, as well as existing necessities, the use of existing tracks, the construction of additional ones, the convenient storage of freight at all seasons, and the unembarrassed transaction of all business.

A railroad company will not be permitted to cross the track of an older company so as to deprive the older company at the point of crossing of the use of about three fourths of its right of way, and so as to leave to it sufficient space only for a single track, where the evidence shows that the older company has an extensive mileage and business, and that its future needs will require two tracks and a large siding at the proposed point of crossing. In such a case an overhead crossing will be decreed by the court where it appears that the cost of such crossing will not be burdensome to the company desiring to cross.

Where a court of equity in proceedings under the act of June 19, 1871, to regulate the crossing of one railroad by another, decrees a temporary crossing for construction purposes, a time limit for the temporary grade crossing should be designated.

In proceedings under the act of June 19, 1871, the court below should find and state briefly and clearly the facts of the case.

Argued May 5, 1902.    Appeal, No. 283, Jan. T., 1901, by defendant, from decree of C. P. McKean Co., June T., 1901, No. 2, on bill in equity in case of Smethport Railroad Company *v.* Pittsburg, Shawmut & Northern Railroad Company. Before McCollum, C. J., Mitchell, Brown, Mestrezat and Potter, JJ.    Decree modified.

Bill in equity to regulate a crossing of one railroad by another.

Morrison, P. J., filed the following opinion :

This is a bill in equity filed by the plaintiff company for the purpose of procuring a decree for a railroad crossing of defend-

ant company's railroad and right of way, in the borough of Smethport, at a point thirty-six feet east of the east edge of Marvin street, in said borough.

At the point of proposed crossing, the plaintiff's railroad and the defendant's railroad, and the Bradford, Bordell & Kinuza Railroad, all run in substantially the same direction, but the plaintiff company's road as located, in order to reach its termini, must cross both of the other roads. A grade crossing at this point is strenuously objected to by the defendant company, and we are of the opinion that no grade crossing should be allowed at this point. It needs no citation of authority to establish the proposition that the plaintiff company having lawfully located its railroad, has a legal right to cross the road and right of way of the defendant company under such rules and regulations as may be established by a court of equity. On the part of the defendant company an objection is sought to be raised to the manner of crossing Marvin street by the plaintiff company, and also objection is made that the plaintiff has not shown any right to cross the track and right of way of the Bradford, Bordell & Kinuza Railroad Company.

We are very familiar with the location of these railroads at and near the proposed point of crossing, as this point is but a few rods distant from our residence. The formation of the ground is such at the point of crossing that the plaintiff company must carry its railroad over Marvin street at a height of not less than twenty feet from the grade of said street, and if permitted to cross the defendant company's track at an elevation of twenty-one feet it will have to elevate its road substantially the same height above that of the Bradford, Bordell & Kinuza Railroad.

No issue is pending in this case as to the right of the plaintiff company to have an overhead crossing above Marvin street, or its right to an overhead crossing of the Bradford, Bordell & Kinuza Railroad Company. In our opinion, it does not lie in the mouth of the defendant company to raise any question as to the crossing of Marvin street and the Bradford, Bordell & Kinuza Railroad, except in so far as it may go to the character, safety and manner of the crossing as to the defendant's railroad and right of way. We have found as a fact, in answer to requests, that the proposed crossing on the plan presented by the

plaintiff company is necessary and proper, with certain modifications which we have indicated in our answers to certain requests.

The defendant company contends that its sixty feet right of way should be spanned with a bridge so that it might construct and operate not less than four tracks at the point of crossing. This we consider unreasonable, as there is no probability and scarcely a possibility that the defendant company will ever need more than two tracks at this point. At the present time the business transacted on the defendant's road is of trifling importance, and in our opinion a provision for two tracks at the point of crossing, with sixteen feet of clearance for each horizontally and twenty-one feet perpendicular, will furnish ample accommodation for any business that the defendant company will ever be called upon to transact over its road.

We are clearly of the opinion that a decree ought to be granted, allowing the plaintiff to make an overhead crossing at the point thirty-six feet east from the east edge of Marvin street; that the perpendicular clearance ought to be twenty-one feet from the top of the highest rail of the defendant company's road; that the horizontal clearance ought to be sixteen feet for each of the two tracks which we think ought to be provided for, for the defendant company, that is to say, eight feet from the center of each track each way.

We are further of the opinion that hemlock is not suitable timber for the construction of this overhead crossing, and that the decree should be framed, requiring the plaintiff company to construct its overhead crossing from the west side of Marvin street to the southeasterly edge of the defendant company's right of way, of good, sound white oak timber. And that if the ground shall be found to be spongy, moist, springy or unsuitable for stone foundations, that the bents or supports of the overhead crossing for the same distance, or such part of it as is necessary, shall rest upon stone foundations placed on piles properly and securely driven.

We are also of the opinion that the decree should provide for a temporary grade crossing by the plaintiff company for the purpose of construction only. The plaintiff company, giving bond in a suitable sum, conditioned that said grade crossing will only be used for construction purposes, and that

the same will be promptly removed upon the order of the court, and conditioned further for the payment of any damage resulting to the defendant company from such temporary grade crossing.

The court entered the following decree :

That the exceptions to findings of fact and conclusions of law and to rulings on evidence, filed August 5, 1901, be dismissed, and that the exceptions to the draft of decree filed on the same date be dismissed in so far as they are not in harmony with this decree.

That the plaintiff may construct, maintain and operate an overhead crossing over defendant's railroad and right of way, the center line of which crossing shall intersect defendant's railroad at a point midway between the rails of its present constructed railroad distant thirty-six feet east of the east line of Marvin street, in the borough of Smethport.

That the overhead crossing structure from the west side of Marvin street to the south easterly edge of defendant's right-of way, shall be constructed of good, sound white oak timber. The bents to be $12'' \times 12''$ and the lateral oblique braces $3'' \times 10''$; the bents to rest upon clear stone masonry foundations, piers as high as the top of rail of defendant's railroad; the horizontal distance at right angles from the center of present track to the nearest points of the bents on either side shall be eight feet. Should the ground be found to be spongy, springy or unsuitable for stone foundations, the bents or supports for the same distance, or such part as is necessary, shall rest upon stone foundations placed on piles properly and securely driven.

That a steel plate girder bridge, capable of sustaining 1,000 pounds dead load, and 3,000 pounds live load per running foot, shall span the defendant's present constructed track, with a vertical or perpendicular clearance of twenty-one feet from the top of the highest rail of the present track to the lowest point of the bridge.

That the overhead structure be so built and arranged that provision be made in its construction to permit of the placing thereon, by order of this court, and under the same conditions as hereinbefore specified, of a second steel plate girder bridge of the kind and quality herein specified; to be placed so as to permit the defendant, should it so determine, to construct,

maintain and operate a second track parallel with and far enough south of its present constructed track, so that the distance between the centers of said two tracks shall not exceed eighteen feet and six inches. The court now reserving the right to order and direct the plaintiff to place the second bridge thereon, whenever, in the opinion of the court, the defendant company has a bona fide intention, to be evidenced by lawful action of its board of directors, and such other evidence as the court may require, to construct a second track for the accommodation of its business; the plaintiff to give security, to be approved by this court, in the sum of $5,000, conditioned that said second bridge will be procured and placed thereon, with all reasonable diligence, when so ordered by this court; the plaintiff company to have reasonable notice of the intention of the defendant to apply to the court for an order for the construction of the second bridge.

That the defendant remove, or cause to be removed, at the place of location of said overhead crossing, the section house occupied by their employees and the McCabe barn, and place no other obstruction at said place.

That the plaintiff may cross at grade, for the sole and only purpose of constructing its railroad to its southeasterly terminus, and constructing said overhead crossing, the track or tracks of defendant, at any point of defendant's road east of Marvin street not exceeding 150 feet, and for said purpose may construct and maintain across the track or tracks of defendant company, in a reasonable and proper manner, the necessary, proper and sufficient crossing frogs, so as not to interfere with the use of its tracks by the defendant for its passenger, freight and other trains. Said crossing to be constructed after reasonable notice to defendant company, or its engineer, and so far as is reasonable and practicable in accordance with his suggestions. Before any of the plaintiff's trains shall cross said grade crossing they shall come to a full stop 100 feet from the point of crossing. The rate of speed of plaintiff's trains in going over said crossing shall not exceed four miles per hour, and in all cases plaintiff's train or trains in using said grade crossing shall be preceded by the conductor or trainman for the purpose of ascertaining that the way is clear and safe for making the crossing. All of defendant's trains to have the

right of way at the point of crossing, in preference to plaintiff's trains.

The plaintiff shall give bond, in the sum of $3,000, to be approved by this court, conditioned that said grade crossing shall only be used for construction purposes, and that the same shall be promptly removed upon the order of this court, and further conditioned for the payment of any damages resulting to defendant from such temporary grade crossing.

That the plaintiff may construct and erect upon defendant's right of way, under proper precautions, all necessary foundations, bents and piers of the permanent structure, and also false works or scaffolding necessary for erecting said overhead crossing, and any other appliances necessary in said construction which do not obstruct defendant's present railroad.

That defendant, its officers, agents, servants and employees must in no way or manner interfere with the plaintiff in the reasonable and proper construction, maintenance and operation of said overhead crossing, nor in the construction and operation of said temporary grade crossing.

That the costs of this proceeding be paid by the plaintiff.

*Errors assigned* were to rulings on various requests for findings of fact and law.

*John G. Johnson* and *Edwin E. Tait*, with them *Frank Sullivan Smith*, *Thomas F. Richmond* and *Sheridan Gorton*, for appellant.—The decree entered in the case at bar places the rights of the appellant company entirely subservient to the wishes of the plaintiff company : Northern Central Ry. Co.'s App., 103 Pa. 621 ; Perry County R. R. Extension Co. v. Newport, etc., R. R. Co., 150 Pa. 193 ; Pittsburg Junction R. R. Co.'s App., 122 Pa. 511; Sharon Ry. Co.'s App., 122 Pa. 533 ; Western Penna. R. R. Co.'s App., 99 Pa. 155.

Under the settled law, upon the question of the crossing of one railroad by another at grade, for any purpose, a grade crossing can only be permitted where the evidence shows a case of imperious, manifest and unavoidable necessity, and not a necessity created by the plaintiff for its own convenience, or for the sake of economy : Pittsburg, etc., R. R. Co. v. Lawrence Co., 198 Pa. 7 ; Penna. Schuylkill Valley R. R. Co. v. P. & R. R. Co., 151 Pa. 402.

*J. W. Bouton,* with him *F. D. Gallup,* for appellee.—The appellee contends that in fixing the manner of crossing of one railroad over another, the court should take into consideration the character of both roads, the amount of business actually done on each and the prospect of future business, and while the rights of the road first constructed are to be primarily regarded and protected, the rights and interests of the crossing road are also to receive a reasonable degree of care and consideration; and a comparatively slight injury or inconvenience to the former need not be avoided when the avoidance would necessarily inflict a great injury on the latter or would involve an unreasonable expenditure of money out of all proportion to the damage done : Baltimore & Philadelphia Railroad Company v. Phila., Wilmington & Baltimore Railroad Company, 17 Phila. 396; Appeal of the Philadelphia & Reading Railroad Company, 1 Montgomery County Law Repr. 141 ; Pittsburg Junction Railroad Company v. Allegheny Valley Railroad Company, 146 Pa. 297.

That the learned court below was fully warranted under the law in authorizing such temporary grade crossing is sustained by the case of Pennsylvania Schuylkill Valley Railroad Company v. P. & R. R. R. Co., 151 Pa. 402.

OPINION BY MR. JUSTICE MESTREZAT, May 19, 1902 :

The plaintiff has a constitutional right with its road to cross the railroad of the defendant company, subject, however, in the exercise of the right to the control of a court of equity under the provisions of the act of June 19, 1871, Purd. Dig. 780. The 2d section of the act declares that " when such legal proceedings relate to crossings of lines of railroads by other railroads, it shall be the duty of courts of equity of this commonwealth to ascertain and define, by their decree, the mode of such crossing which will inflict the least practicable injury upon the rights of the company owning the road which is intended to be crossed ; and if, in the judgment of such court, it is reasonably practicable to avoid a grade crossing, they shall by their processes prevent a crossing at grade." This court has frequently interpreted this section of the act of 1871, and in doing so has clearly defined the rights of the two contesting railroads. In Pittsburg & Connellsville Railroad

Co. v. Southwest Pennsylvania Railway Co., 77 Pa. 173, MERCUR, J., delivering the opinion of the court, says: " We see it (act of 1871) does not put the rights of the company desiring to cross the railroad of another, on a level with the rights of that other company, but manifestly declares them to be secondary. Two thoughts are clearly expressed in this statute. The one, that no unnecessary injury shall be perpetrated on the road sought to be crossed; the other, that crossings at grade shall be prevented whenever they can reasonably be avoided. . . . . The parties do not stand on an equality. The rights of the first occupant of the ground, in pursuance of law, are recognized as superior to those of the new claimant." In Pittsburg Junction Railroad Company's Appeal, 122 Pa. 511, it is held that a railroad company has a right to consider the needs of the future and to construct its road and make its plans with reference to those needs. PAXSON, J., speaking for the court quotes and declares as sound and sensible the following language of Judge MCKENNAN in Lake Shore, etc., Ry. Co. v. New York, etc., Ry. Co., 8 Fed. Repr. 858 : " Every reasonable intendment must be taken in favor of the primary rights of the complainant at the points of the alleged conflict. No actual encroachment upon these rights can be sanctioned or allowed, and in measuring their extent there must be a liberal consideration for the future, as well as the existing necessities of the complainant, the use of the existing tracks, the construction of additional ones, the convenient storage of its freight at all seasons, and the unembarrassed transaction of all its business."

We do not think it necessary to take up and consider separately the thirty-nine assignments of error filed in this case. It would unduly and unnecessarily extend this opinion. It is to be regretted that the learned trial judge did not, in addition to answering the points, find and state briefly and clearly the facts of the case. Such is much the better practice and the one that should be adopted in cases of this character.

The appellant objects to the decree entered by the court below, and alleges that it does not provide a proper mode of crossing its right of way, one that will inflict the least practicable injury upon the rights of the appellant company; and that a temporary grade crossing for construction purposes

should not be permitted without limitation as to time. We have read and carefully considered all the testimony in the case and in our judgment it does not authorize the decree entered by the learned trial judge. The appellee's road crosses the appellant's right of way at an angle of 21° and 28′ and the mode of crossing as defined by the decree deprives the defendant company at this point of the use of about three fourths of its right of way, leaving to it at the place of the proposed crossing sufficient space only for a single track, unless the appellant company in the future convince the court that it needs an additional track. The reason for the decree, as stated by the learned judge, is that "there is no probability and scarcely a possibility that the defendant company will ever need more than two tracks at this point" and that "at the present time the business transacted on the defendant's road is of trifling importance." These conclusions ignore the facts disclosed by the evidence. The appellant had secured a right of way sixty feet in width, presumably to be used for the construction of its roadway. The testimony of its officers is to the effect that it will occupy with its tracks the full right of way at the place of crossing; that the plans of the appellant company call for a double track and for a long siding at that point; that its railroad carries passengers, coal, lumber and general merchandise, eighty-five per cent of its traffic being coal; that at present it has a daily coal tonnage of about 3,200 tons and that new mines are being opened and means are being taken to increase the coal tonnage to 6,000 tons per day, or 1,500,000 tons annually. The court found that the appellant had finished and was operating 143 miles of its through line of road, and that on portions of the road, including the place of the crossing, it was running regular passenger and freight trains. With these facts conceded or indisputably established, the mode of crossing the right of way by the appellee's road, defined by the court below, invades the superior rights of the appellant company. Having selected and adopted the route for its road, the appellant may use the whole or any part of it for the purpose for which it was acquired, and to the extent that such use is necessary the appellee cannot, without an imperative necessity, appropriate any part of it in crossing or for any other purpose. Here, as observed above, it is shown that the future needs of

the road will require two tracks and a large siding. The appellant company has constructed only one track, but it has the unquestioned right to anticipate its future necessities in the operation of its road, and hence its right to adequate space over its right of way for additional tracks in the future made necessary in handling its traffic. An overhead crossing is conceded to be practicable. But neither its economical construction nor the convenience of the appellee is sufficient to justify the exclusive occupancy of any part of the appellant's right of way which is necessary for the operation of the latter's road. In the location of its road, the appellee should have considered the mode of crossing the appellant's railroad and the possibility of other locations by means of which such crossing would be avoided : Perry County Railroad Co. v. Newport & Sherman's Valley Railroad Co., 150 Pa. 201. Such considerations might have saved the appellee the expenditure of a large sum of money. This expenditure, however, will not be permitted to interfere with the franchises of another railroad company. Pennsylvania Railroad Company's Appeal, 93 Pa. 150. The primary rights of the appellant to its right of way must be regarded and enforced, subject only to the right of the appellee to a crossing " which will inflict the least practicable injury upon the rights of the company owning the road which is intended to be crossed."

We are convinced by the evidence in the case that the appellant will need sufficient space for two tracks and one siding, and we agree with its counsel that a proper mode of crossing its road will be by a three-span structure with a vertical clearance of twenty-one feet supported by iron posts on piers resting upon the right of way, as shown by exhibit " N," and fully and particularly described in the testimony of A. G. McComb, the civil engineer. Such an overhead crossing may not do the least practicable injury to the appellant, but manifestly it gives to the appellee all the rights and privileges on and over the appellant's right of way to which it is entitled. It involves the expenditure of more money than the mode of crossing directed by the court below, but the excess is not burdensome nor sufficient to justify complaint on the part of the appellee.

Under the testimony and the finding of facts by the learned trial judge, we cannot say that he erred in granting the ap-

pellee a temporary crossing for construction purposes; but the court should have required its removal within a designated time. As the decree hereinafter directed to be made by the trial court will finally dispose of the case, the reason for not fixing a time limit for the temporary grade crossing suggested in the argument of appellee's counsel, will cease and hence no longer avail their client. If necessary, the court below can take further testimony to enable it to ascertain the time in which the grade crossing should remain on the appellant's right of way. If any valid reason should arise for extending the time fixed in the decree, the court being convinced of the fact can modify the decree so as to protect and enforce the rights of the parties.

It is now ordered, adjudged and decreed that the court of common pleas of McKean county, sitting in equity, modify the decree heretofore entered by it in this case on August 9, 1901, so as to conform to the views expressed in the foregoing opinion, and the decree as thus modified is affirmed. It is further ordered that the appellee pay the costs of this appeal.