## CINCINNATI, N. O. & T. P. RY. CO. v. MORGAN COUNTY, TENN.

(Circuit Court of Appeals, Sixth Circuit. February 24, 1906.)

No. 1,432.

INJUNCTION—LOCATION OF GRADE CROSSING.

> A court of equity is without jurisdiction to enjoin a county court of a county of Tennessee, which is vested by statute with discretionary power in the location and construction of highways, from locating a grade highway crossing over the tracks of a railroad at suit of the railroad company, unless a taking of property which is essential to the operation of the railroad or other irreparable injury to the company is shown or that the proposed action will be in violation of some law.

Appeal from the Circuit Court of the United States for the Eastern District of Tennessee.

Edward Colston and Chas. R. Head, for appellant.
T. A. Wright and J. M. Davis, for appellees.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge. This is a bill filed to prevent the county of Morgan, one of the counties of Tennessee, from establishing a highway crossing, at grade, over the tracks of the complainant railroad company at or near the village of Oakdale in said county.

At the locus in quo the Emery river and railroad run parallel to each other. To reach the railroad at Oakdale, Emery river has to be crossed, and this had theretofore been done at a ford. Though generally shallow and fordable, Emery river is a mountain stream, and when swollen by unusual rains becomes unfordable. To give a large part of the county more convenient access to the village of Oakdale and to the railroad station at the village, the county contracted for an iron bridge over Emery river. This bridge was in course of erection when it was sought to change the course of the road between Emery river and Oakdale, with a view to a proper approach to the new bridge. The road commissioner for the district and the road committee accordingly reported that the old road crossing Emery river should be so changed as to run from the bridge to the

railroad, which should be crossed at grade. This old road had there-tofore gone under the railroad at a point where Mudlick creek is crossed by a railroad bridge, about 100 feet above the proposed crossing at grade. But this crossing had been found at times impassable, because the bed of the creek was the road under the bridge, and the creek was subject to rises which made it at times unsafe to go under the bridge. In such circumstances the public had been in the habit of crossing at grade about 100 feet below the bridge. This old place of crossing is the one the road commissioner has recommended for a permanent crossing. The appellant company appealed from the road commissioner's action to the quarterly court and said report was due to be filed and heard on Monday, January 4, 1904. On January 2d this bill was filed, and, upon its averments, together with certain affidavits, the county court was enjoined from proceeding with the matter. The case came on to be finally heard in the Circuit Court upon the pleadings and evidence and upon a report of a special master as to the feasibility of a crossing at grade, when the court found for the county and dismissed the bill. From this decree an appeal has been allowed.

A great book of testimony has been taken upon the matter of whether under all the conditions it would be best that the county should cross complainant's tracks at grade or by an overhead bridge, or by going under the Mudlick bridge as heretofore, or by providing an under way at some other point. Much evidence has also been had as to how Morgan county can best provide a road which shall approach the new bridge where it now stands or whether it would not be better to build the bridge at some other site, where a better crossing of the railroad tracks might be made than that proposed. The learned counsel for the railroad company has not challenged the right of the county to provide for highways crossing its tracks. This they concede. But whether conceded or not there is nothing more obvious than that a railway company holds its right of way subject to the right of the sovereign to cross its right of way whenever the public convenience shall require the opening of new highways or the changing of the course of old ones. 8 Am. & Eng. Encyc. p. 377, and cases cited; New York, etc., Rd. Co. v. Drummond, 46 N. J. Law, 644.

The point upon which appellant's counsel makes the case turn is upon the power of the court of equity to prevent a grade crossing, and to require that the crossing shall be either under or over the track of the railway; that there is no statute in Tennessee forbidding grade crossings is conceded; that as a rule the highways of that state do cross at grade is also conceded or proven. In Tennessee the jurisdiction over questions of opening, closing, changing or restoring roads belongs to the quarterly or county court. The initiative is a petition addressed to the road commissioners of the district in which the road lies, with notice to persons whose interests will be affected. The road commissioner then fixes a day when he will attend and act upon the matter. This recommendation he reports to the county court, together with an assessment of damages for property taken.

The matter is then considered by the county court through a committee whose action must be assented to by a majority of the justices sitting. · This is final unless appealed. But any interested party is allowed an appeal to the Circuit Court and from the judgment of the Circuit Court error proceedings lie to the Supreme Court.

The complainant after getting the matter into the county court by its appeal desisted from further defense there and appealed to a court of equity to stay further proceedings before anything of a definite character had been done. This matter of changing an old road or opening a new one is one which primarily lies within the political or legislative powers which belong to a Tennessee county court. That court is composed of the justices of the peace for the county, and is often alluded to by the Tennessee Supreme Court as a "Miniature Legislature" in respect to matters pertaining to the administration of purely county affairs. Whether a new road shall be opened or the course of an old one changed, are questions which rest in the discretion and judgment of that body. The conclusion is one which must depend upon consideration of public convenience, the ability of the county to incur the expense being one which must largely determine the conclusion. Acts Tenn. 1899, p. 863, c. 368, § 6; Wood v. Tipton County, 7 Baxt. (Tenn.) 112, 32 Am. Rep. 561; Gilson v. State, 5 Lea (Tenn.) 161; State ex rel. v. Justices of Wayne County, 108 Tenn. 259, 262, 67 S. W. 72. The exercise of a power, which rests in discretion and judgment, cannot be coerced. Horton v. Mayor of Nashville, 4 Lea (Tenn.) 39, 48, 40 Am. Rep. 1; Dillon on Mun. Corp. § 753.

It may be that the crossing of a railroad at grade might, under certain circumstances, be absolutely destructive of the franchise to operate a railway, and the damage so resulting irreparable at law. In such a case, if one should arise, a court of equity might find itself able to grant relief under the well-recognized head of equity jurisdiction in respect of damages incapable of redress by an action at law. But we have been unable to discover any authorities of moment where a court of equity has intervened to restrain a crossing unless there has been a taking of property for the purpose which was forbidden by statute as necessary to the enjoyment of the general franchise. Such was the case of Albany Northern Rd. Co. v. Brownell, 24 N. Y. 345, and Smethport R. Co. v. Pittsburg Rd., 203 Pa. 176, 52 Atl. 88. We have been referred to the case of Franklin Turnpike Co. v. County Court of Maury, 27 Tenn. 342, and Turnpike Co. v. Davidson County, 106 Tenn. 258, 61 S. W. 68, cases where the action of county courts of Tennessee, in authorizing the opening of particular roads, was enjoined. Both were cases of turnpikes opened in violation of the charter rights of turnpike companies, and the injunction granted because of the impairment of the contract of a chartered company. The most that has been made out in this case as a reason for enjoining a grade crossing is that such a crossing will to a certain extent inconvenience the business of the railroad company. The crossing is not through the yards or terminals of the company, but at a place south of its yards, but close enough to be

sometimes used for switching purposes when the trains are of unusual length. The extent of such use is matter of great conflict and wide difference of opinion as to the amount of inconvenience resulting. That a grade crossing is more dangerous to the public and to the railway company may be conceded. Still it would take a more than ordinary case to justify a court of equity in substituting its judgment for that of the semilegislative body intrusted with the whole subject of public highways.

The case of the Wabash Rd. v. City of Defiance, 52 Ohio St. 263, 10 N. E. 89, and upon writ of error in the Supreme Court of the United States 167 U. S. 88, 102, 17 Sup. Ct. 748, 42 L. Ed. 87, was a case which, in one aspect, involved the power of a court of equity to restrain the action of a municipality from causing the removal of an overhead street crossing and the making of a crossing at grade. Mr. Justice Brown, speaking for the court, after referring to the modern tendency to avoid grade crossings, said:

"But however this may be, we are not at liberty to inquire whether the discretion vested in the common council of determining this question was wisely exercised, or what the motives were for making the change; or whether the crossing so improved was burdensome to the railroad company; or made unsafe to persons crossing the track. These were considerations which might properly be urged upon the common council as arguments against the proposed change; but it is beyond the province of the courts either to praise the wisdom or criticise the unwisdom of such action. The question before us is simply whether the council had the power to make the change, and of this we have no doubt."

The case of the Lake Shore & M. S. R. Co. v. C. W. I. Rd. Co., 97 Ill. 506, and Illinois Central Rd. Co. v City of Chicago (Ill.) 30 N. E. 1044, 17 L. R. A. 530, were much stronger applications upon the theory of irreparable injury than that made out here; but in both the court declined to enjoin the opening of streets; in one instance through the yards of a railway company.

The right of the general public, when exercised according to law, to make new highways, or to change the course of old ones as the convenience of the public may require, should not be restrained by any mere inconvenience to be borne by the railway whose track is crossed. To the extent that property is actually taken or damages directly inflicted the law provides for compensation. It is not our province sitting as a court of equity to enter into a mere balancing of convenience and inconvenience. The county court will not exceed its power and authority if upon a consideration of all the reasons which should move the discretion of such a legislative body it shall permit a grade crossing. Manifestly no error was committed in denying relief under the pleadings and proofs in this case.

The decree is accordingly affirmed.