## UNION RY. CO. v. ILLINOIS CENT. R. CO

(Circuit Court of Appeals, Sixth Circuit.   June 30, 1913.   Rehearing Denied
October 10, 1913.)

### No. 2,323.

**1.** COURTS (§ 508*)—FEDERAL COURTS—INJUNCTION AGAINST PROCEEDINGS IN
STATE COURT.

A suit in a federal court by one railroad company against another to
prevent the latter from obtaining the benefit of a judgment in a state
court authorizing it to construct a grade crossing over complainant's
railroad on the ground that it would be inequitable was not a suit to
obtain a decree acting on the state court nor forbidding action in that
court, and was therefore not within the prohibition of Judicial Code, §
265 (Act March 3, 1911, c. 231, 36 Stat. 1162 [U. S. Comp. St. Supp. 1911,
p. 236]; Rev. St. § 720 [U. S. Comp. St. 1901, p. 581]), forbidding, ex-
cept in a single case, the granting of an injunction by any court of the
United States to stay proceedings in a state court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1418–1423, 1425–
1430;  Dec. Dig. § 508.*

Enjoining proceedings in state courts, see notes to Garner v. Second
Nat. Bank, 16 C. C. A. 90;  Central Trust Co. v. Grantham, 27 C. C. A.
575;  Copeland v. Bruning, 63 C. C. A. 437.]

**2.** COURTS (§ 508*) — FEDERAL COURT — JURISDICTION — INJUNCTION AGAINST
DECREE OF STATE COURT.

Diverse citizenship of parties gives a federal court in equity jurisdic-
tion to enjoin the enforcement of a state court decree to the same extent
as such relief would be obtainable in a state court of equity, but no fur-
ther.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1418–1423, 1425–
1430;  Dec. Dig. § 508.*]

**3.** RAILROADS (§ 91*)—CROSSING OTHER RAILROADS—GRADE CROSSING—STAT-
UTES.

Shannon's Code Tenn. § 1504, provides that all railroads of the state
have power to construct their roads so as to cross each other if neces-
sary by the main trunks or branches, or to unite with each other as with
branches. Sections 1845 and 1854–1857, relating to the condemnation of
land by railroads, provide for the setting apart by metes and bounds of
the land condemned and that in estimating the damages the jury shall
give the value of the land without deduction. *Held* that, there being no
statutory provision as to the method of crossing, the courts have no juris-
diction to require other than a grade crossing unless the conditions sur-
rounding the crossing at the point proposed are such that a grade cross-
ing would be practically destructive of the objecting railroad company's
franchise to operate a railroad at that place.

[Ed. Note.—For other cases see Railroads, Cent. Dig. §§ 249–259;  Dec.
Dig. § 91.*]

**4.** RAILROADS (§ 91*)—CROSSING OTHER RAILROADS—GRADE CROSSING—EF-
FECT.

Evidence *held* insufficient to show that condemnation of a grade cross-
ing for defendant's railroad over the right of way of complainant's road
at a point near where several spurs and sidings were laid from complain-
ant's main line, just north of complainant's railroad yards at N., would
result in a practical destruction of complainant's franchise to operate a
railroad at that place, so as to require the construction of the crossing
under complainant's tracks.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 249–259;  Dec.
Dig. § 91.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the District Court of the United States for the Western District of Tennessee; John E. McCall, Judge.

Bill by the Illinois Central Railroad Company against the Union Railway Company. Decree for complainant, and defendant appeals. Reversed and remanded, with directions.

This is an appeal from the final decree of the District Court perpetually enjoining appellant from making a crossing over appellee's right of way and tracks at grade, or in any way except by a subway or underpass. Appellee operates a through line of railroad from Chicago to New Orleans, by way of Memphis. Appellant is organized as a corporation under the general railroad laws of Tennessee, operating at and in the vicinity of Memphis; its principal business being that of a belt line. Under the statutes of Tennessee, railroad companies are empowered to condemn lands of other railroad companies for crossing purposes, and the benefit of these statutes extends to appellant. Shannon's Code of Tennessee, §§ 1504, 1868; Memphis & State Line R. Co. v. Union Railway Co., 116 Tenn. 500, 527, 95 S. W. 1019; Collier v. Union Railway Co., 113 Tenn. 96, 118, 83 S. W. 155.

In constructing its road according to its charter, appellant sought to cross appellee's main line at a point about two miles south of Memphis. The circuit court of Shelby county, Tenn., which has jurisdiction over condemnation proceedings under the statutes referred to, upon due notice and appearance by appellee, found as a fact that it was necessary that appellant have a right of way through appellee's property over and across a designated strip of land, adjudged appellant's right to condemn the strip so designated, and appointed a "jury of view" to ascertain damages for the condemnation and taking of such right of way. The jury heard the proofs adduced by the parties, set apart by metes and bounds the strip in question, and assessed appellee's damages at $3,250. It is conceded that the crossing so allowed was a grade crossing, and that the damages were awarded on that basis. Appellee excepted to the jury's report, and asked that it be set aside and a new writ of inquiry awarded, for the reasons, among others: (a) That the jury disregarded the evidence as to the feasibility of putting the tracks underneath the tracks of appellee; (b) that the evidence introduced showed damages many times greater than those awarded by the jury; that the award was so inadequate that an appeal therefrom under a statutory bond would be insufficient protection to appellee's constitutional rights; and (c) that the jury disregarded evidence as to the necessity of establishing an interlocking plant for insuring safety in the operation of trains.

Without waiting for action upon its exceptions, appellee filed its bill in the court below (then the Circuit Court), alleging the pendency of the condemnation proceedings in question, and that appellant would, unless restrained, "probably procure an order or take such proceedings as will authorize it to construct its tracks at grade across the railroad of your complainant." It further alleged the award of damages, the fact that no order had yet been entered confirming the jury's report, and that appellant would on a day named (being the day on which the bill of complaint herein was filed) ask the Circuit Court "to make such an order or take such proceedings as will authorize it to go upon complainant's property and lay its tracks across complainant's tracks." The bill alleged complainant's willingness that appellant construct its line from one side of complainant's tracks to the other, "provided it is done by going underneath complainant's tracks," but alleged that a crossing at grade would inflict irreparable injury upon complainant, not only because of the risk of collision between trains of the two companies, but also because of the financial loss and material interference with transportation through being required, under the laws of Tennessee, to stop all of its trains before reaching the crossing. The bill further alleged, as a ground of equitable jurisdiction, that the condemnation proceeding was in a court of law, and that appellee's defenses were equitable in character and so could not there be considered.

An order was made restraining appellant not only from attempting to cross, at grade, appellee's right of way at the proposed point, but also from further

prosecuting the condemnation proceedings. The preliminary injunction later issued, as well as the final decree, omit the provision restraining the prosecution of the condemnation proceedings. By decree upon final hearing the court found an underpass with 16 feet clearance feasible and practicable; that it could be constructed at a cost of $26,000 above the cost of a grade crossing; that a crossing at grade at or near the point in controversy would seriously and unnecessarily impair the value of complainant's railway, would interfere with the proper operation of its trains, would largely and unnecessarily increase the danger to passengers and train operators, and would subject complainant to serious and irreparable damages. The perpetual injunction was made upon a condition (accepted by complainant) that the latter pay one-half the estimated cost of the subway, subject to certain minor limitations not necessary to be stated.

J. W. Canada, of Memphis, Tenn., for appellant.

C. N. Burch and H. D. Minor, both of Memphis, Tenn. (Blewett Lee and C. L. Sivley, both of Chicago, Ill., of counsel), for appellee.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge. [1, 2] This appeal presents the broad question whether a court of equity, upon the case here presented, may lawfully forbid a railroad company crossing at grade the right of way and tracks of another railroad company under the authority of the Tennessee statutes. We set aside as without merit the contention that the decree complained of violates section 265 of the Judicial Code (formerly section 720 of the Rev. Stat. [U. S. Comp. St. 1901, p. 581]), which forbids, except in the single case there stated, the granting of injunction by any court of the United States to stay proceedings in any court of a state. The decree does not act upon the state court, nor does it in terms forbid action in that court. It in effect seeks to prevent appellant from obtaining the benefit of a judgment claimed to be inequitable. The existing diversity of citizenship between the parties gave to the federal court precisely the same jurisdiction as vested in a court of equity of the state of Tennessee. In other words, appellee is entitled in the federal courts to the relief obtainable in the state court, but to no greater relief. Arrowsmith v. Gleason, 129 U. S. 86, 98, 9 Sup. Ct. 237, 32 L. Ed. 630; Marshall v. Holmes, 141 U. S. 589, 599, 12 Sup. Ct. 62, 35 L. Ed. 870; Smyth v. Ames, 169 U. S. 466, 516, 18 Sup. Ct. 418, 42 L. Ed: 819; Ewing v. City of St. Louis, 5 Wall. 413, 419, 18 L. Ed. 657; Bank of Kentucky v. Stone (C. C. 6th Cir.) 88 Fed. 383, 398.

The authority of a court of equity to enjoin the proposed grade crossing must be considered in the light of certain uncontroverted propositions:

[3] The Tennessee Railroad Act (Code, § 1504) provides broadly that:

"All the railroads of the state have power to construct their roads so as to cross each other, if necessary, by the main trunks or branches, or to unite with each other as with branches."

There is no other statutory provision as to method of crossing. The general condemnation statute, which applies to railroads, provides for the setting apart by metes and bounds of the land condemned, and that

in estimating the damages "the jury shall give the value of the land without deduction," etc. Sections 1845 and 1854–57. Counsel on both sides rightly concede that the state circuit court (which is the only tribunal given original statutory jurisdiction over this proposed condemnation) had no authority to decree any crossing except at grade. That court clearly had complete jurisdiction to grant or deny appellant's right to the crossing. If not convinced of its legal necessity, it was its duty to deny the application. It was, however, so convinced, and granted it. That court had also complete jurisdiction over the subject of damages resulting from a grade crossing, and·a court of equity could not properly interfere'with the exercise of such jurisdiction because of the difficulty of questions affecting the amount of damages. Dixon v. Louisville & N. Ry. Co., 115 Tenn. 362, 366, 89 S. W. 322. Moreover, the general rule is that equity will not interfere to control condemnation proceedings still pending in a special statutory tribunal (Pennsylvania R. Co. v. National Docks, etc., Co. [C. C.] 56 Fed. 697; Ewing v. City of St. Louis, supra); and the laws of Tennessee afford complete remedy by review in the Supreme Court, upon the merits of the preliminary inquiry, as to the right of condemnation. Tennessee Central R. Co. v. Campbell, 109 Tenn. 655, 660, 73 S. W. 112. But it is because of the lack of power in the state circuit court, to provide for any method of crossing except at grade, that the remedy in equity is invoked, on the ground of irreparable injury and inadequacy of remedy at law. Appellee cites many authorities in support of the proposition that, in the absence of statute regulating the manner in which one railroad shall cross another, a court of equity has power to determine the relative rights of the two companies; and that where the rights of the public or of one or the other of the intersecting lines would be materially injured, such crossing may be enjoined. We pass by these decisions (with one exception) as inapplicable in view of the decision of the Supreme Court of Tennessee, to which we shall presently refer. The exception mentioned is Chicago, B. & Q. Ry. Co. v. Chicago, etc., Ry. Co., 91 Iowa, 16, 58 N. W. 918, in which it was held that a court of equity has jurisdiction to prevent by injunction a crossing at grade. This decision is invoked as specially pertinent because the Tennessee condemnation statute is largely borrowed from the Iowa statute. Even if the decision of the Supreme Court of Iowa were based upon a provision also contained in the Tennessee statute, the decision, made long after the adoption of the statute by the Legislature of Tennessee, would not be binding upon us. But the persuasive force of the opinion is impaired, if not destroyed, by the fact that it invokes a section of the Iowa Code providing that a corporation may "construct and carry .its railway *across, over or under* any railway, canal or watercourse, when it may be necessary in the construction of the same, and in such case it *shall so construct its crossings as not necessarily to impede the travel,* transportation or navigation upon the railway, canal or stream so crossed." (Italics ours.) This provision is not found in the Tennessee statute. A decision made in view of such a statute, that equity might interfere to prevent a grade crossing, is a long way from assert-

ing the existence of such power in the absence of such statutory provision.

We are cited to no decision of the Tennessee courts asserting the power of a court of equity to enjoin a grade crossing; and, so far as we have been able to discover, the courts of that state have never judicially decreed a right to a railroad crossing except at grade. The courts of Tennessee have, on the other hand, liberally construed the statutory right of crossing given to the junior road, and rigidly asserted the jurisdiction of the circuit court. For example: It has been held that a discretion as to the location of the proposed line, even as respects the place of crossing another railroad, is vested in the company desiring to cross, provided there is not a substantial departure from the course and direction indicated by the charter. Tennessee Central R. Co. v. Campbell, 109 Tenn. 655, 664, 73 S. W. 112; Memphis, etc., R. Co. v. Union Ry. Co., 116 Tenn. 500, 533, 95 S. W. 1019. And in Dixon v. Louisville & Nashville Ry. Co., supra, it was said that the circuit court "has as much right to construe the contract [between the parties to a condemnation proceeding] and the common-law and statutory right of 'the complainant to crossings, if to be built at the expense of the railroad, as the chancery court has."

The decision of the Supreme Court of Tennessee in the unreported case of Jackson Railway & Light Co. v. Jackson Southeastern Railroad Co., decided May 8, 1909, is, in our opinion, a conclusive denial of the power of a court of equity to require that a crossing be otherwise than at grade, unless perhaps where such crossing would be practically destructive of the franchise of the senior road. In that case the circuit court awarded a grade crossing, and following the assessment of damages the case was removed to the Court of Civil Appeals, whose judgment, upon petition of both parties, was reviewed by the Supreme Court on certiorari. Among the defenses presented was that it was the duty of the circuit judge, and within his province, to require that the crossing in question should be overhead rather than at grade. This contention was overruled in the following language:

"However desirable it may be to avoid grade crossings, and whatever may be the tendency of legislation to require that overhead crossings of railroads and of public highways should be made, yet in this state the policy has not been adopted by the Legislature, and we do not think, *in the absence of a statutory requirement*, that it is *within the power of the courts* to adopt such a policy. There is nothing in our statutes which suggests that the Legislature ever contemplated giving this power to the courts. In the absence of such legislation the authorities invoked by the Jackson & Southeastern Railroad Company whose track was to be crossed cannot be regarded as controlling in this state. So far as we have been able to discover, the cases in which overhead crossings have been required are rested upon statutory enactments, and the text of Mr. Elliott, in his work on Railroads, in support of the principle that such a crossing should be required, is based, we think, upon such cases. *To adopt the policy thus recognized would be judicial legislation*." (Italics ours.)

It is true that the petitioner in the Jackson Case was organized under the street railway law and not under the general railroad law of Tennessee, but we find no differences in the applicable statutes which should affect the decision of the question we are considering. It is

also true that the Jackson Case was heard at law, and not in equity; but the proposition broadly asserted would seem to apply equally to courts of equity as well as courts of law. If, as there asserted, there is nothing in the Tennessee statutes suggesting that the Legislature ever contemplated giving to the courts the power to adopt a policy of requiring crossings otherwise than at grade, and that to adopt such policy would be judicial legislation, it must be equally true both in equity and at law. The language quoted is the utterance of the highest court of the state, not with reference merely to a question of general law, or of strictly private rights, but with respect to the public policy of the state regarding public and quasi public rights. It should not be disregarded or its binding force lessened by the mere fact that the decision was announced in a case at law rather than in equity. We are not unmindful of the grave dangers attendant upon grade crossings, and of the tendency of many railroads (including appellee), as well as of much modern legislation, to eliminate such crossings so far as practicable, especially when not interlocked; but the question whether a given method of crossing should or should not be allowed is, after all, largely one of state policy; and, so long as that policy is declared·by the highest court of the state to be opposed to the requiring of crossings other than at grade, the remedy does not rest in the federal courts.

We should not, however, be understood as holding that relief could not be had in equity, provided the grade crossing in question were sought to be made at such a point, and under such topographical or other conditions, as to be practically destructive of appellee's franchise to operate a railroad at that place. In the Jackson Railway Case, the proposition that the defendant company could not dispute the petitioner's *right to the route selected* by it as most feasible was made with this qualification, "unless it be that the acquisition of the easements across its tracks will destroy or materially impair the use to which it has been dedicated by the defendant." This manifestly relates only to the question of the extent to which the petitioner's selection of crossing point should be regarded as conclusive upon the question of necessity of crossing at the selected point.

In Cincinnati, N. O. & T. P. R. Co. v. Morgan County, Tenn., 143 Fed. 798, 800,`75 C. C. A. 56, 58, in which equity was invoked to restrain the crossing at grade of a highway over the tracks of a railroad company, under the order of the county court, the present Mr. Justice Lurton (formerly a justice of the Supreme Court of Tennessee, but then speaking for this court), said:

"It may be that the crossing of a railroad at grade might, under certain circumstances, be absolutely destructive of the franchise to operate a railway, and the damage so resulting irreparable at law. In such a case, if one should arise, a court of equity might find itself able to grant relief under the well recognized head of equity jurisdiction in respect of damages incapable of redress by an action at law. But we have been unable to discover any authorities of moment where a court of equity has intervened to restrain a crossing unless there has been a taking of property for the purpose which was forbidden by statute as necessary to the enjoyment of the general franchise."

And after citing authorities the learned justice continued:

"The most that has been made out in this case as a reason for enjoining a grade crossing is that such a crossing will to a certain extent inconvenience the business of the railroad company."

And after a discussion of the testimony relating to that proposition, it was said that:

"It would take a more than ordinary case to justify a court of equity in substituting its judgment for that of the semi-legislative body intrusted with the whole subject of public highways."

In the Morgan County Case the judgment in condemnation was made by the county court, which was a "semi-legislative" body; but the reference thereto is not without pertinency to the case before us, for not only is the court here asked to interpose its judgment against the policy of the Legislature of the state, but also to supersede by its own judgment the determination of the state circuit court.

The facts of the instant case do not bring it within the exceptions stated in the Morgan County Case.

The rule prevailing in one or more of the other circuits (Hardin v. Union Trust Co., 191 Fed. 152, 156, 111 C. C. A. 632), that a decree sustained by findings of fact which there is evidence to support will not be reviewed by the appellate court, has never been adopted by this court. It is our duty to apply our own judgment to the testimony. However, we doubt whether the trial judge (who did not hear and see the witnesses) intended to find the facts more favorably to appellee than we do.

[4] It is true that a grade crossing at the point in question will inconvenience appellee in the operation of its trains, as well as present the element of danger inherent in grade crossings, even (although to a less degree) when interlocked. The most prominent inconvenience asserted lies in the fact that appellee's road at the point of crossing includes two double tracks (north-bound and south-bound, respectively), used not only for high-speed passenger service, but for a large number of other trains daily, and that the grade crossing unprotected by an interlocker system (which system cannot be enforced under the Tennessee statutes) requires (under the statutes) the bringing of all trains to a full stop before crossing. Again, at the crossing point the appellee's road is at a downgrade from north to south, and that of appellant at a downgrade from east to west. An underpass is shown to be much less expensive than an interlocked grade crossing. It, of course, eliminates interference with the movement of trains on the surface-road. But the point of crossing, while about two miles south of Memphis proper, was north of appellee's important Nonconnah Yards, with which the tracks in question were connected by switches. A few hundred feet south of the projected crossing were one or more tracks connected with spurs or sidings serving neighboring industries; about 1,100 feet south of the crossing was a junction which connected with the Nonconnah Yards; 1,400 feet south of this junction was a grade crossing of the Memphis & State Line Railroad. Although, when the testimony was taken, an interlocking system for the protection of the last-named crossing was in process of construction, and the yard junc-

tion (and possibly the junction with the industrial spurs) was protected by an interlocker, yet the crossing in question was practically within appellee's yard limits, and, notwithstanding the interlocking system employed, passenger trains could safely be moved only under full control, which is said to be 30 miles an hour, and much less than the high speed at which trains may be operated under favorable conditions. On the whole, we are convinced that the inconvenience resulting from this grade crossing, while certainly substantial, presents, under all the circumstances, no more than the average case of interference by unprotected grade crossings in yards outside city limits; and as to high-speed trains not so serious an interference as if located outside of yard limits and at a considerable distance from other junctions and crossing points. On the other hand, while an underpass with 16 feet clearance would seem, comparatively speaking, feasible and practicable, a clearance of 21 or 22 feet is always desirable, and seems to be regarded necessary for complete convenience of operation and perfect safety of employés riding upon the tops of cars. Moreover, the conditions as to drainage of the subway, and as to the grade and curvature of the tracks proposed to be passed through it, impress us as being as objectionable and attended with as much danger as the grades at which the two roads would cross at the surface. Were the question of crossing at grade or under grade submitted here purely as a question of original equitable discretion, to be exercised merely upon a balancing of conveniences and inconveniences, we should, especially in view of the inherent dangers of a grade crossing, be inclined to decide in favor of the underpass. But, in our opinion, the case falls far short of amounting to a practical destruction of appellee's franchise, or of presenting such an extraordinary and unusual case of impairment of such franchise, as to justify equitable interference with appellant's rights under the statutory condemnation proceedings.

For these reasons the decree of the District Court must be reversed and the case remanded, with directions to enter a decree dismissing the bill of complaint, and with further directions to ascertain, either with or without reference to a master as the District Court may determine, what, if any, damages have been suffered by the defendant by reason of the injunction issued in this cause, and to award the amount recoverable by defendant on account thereof by virtue of the bond given upon such injunction.