UNITED STATES RAILROAD ADMINISTRATION, W. G. McAdoo, Director General of Railroads (Atlantic Coast Line Railroad), v. BURCH, Sheriff.

(District Court, E. D. South Carolina. November 30, 1918.)

No. 206.

1. RAILROADS ⊂⇒5½, New, vol. 6A Key-No. Series—TAKING POSSESSION OF RAILROADS—COURTS.

The extent of the power conferred by Act Aug. 29, 1916 (Comp. St. 1916, § 1974a), authorizing the President, through the Secretary of War, to take possession of railroads in time of war, etc., and the determination of the property to be taken possession of, are questions for the court.

2. RAILROADS ⊂⇒5½, New, vol. 6A Key-No. Series—TAKING POSSESSION OF RAILROADS—EFFECT.

Under Act Aug. 29, 1916 (Comp. St. 1916, § 1974a), authorizing the President in time of war to take possession of railroads, etc., and the presidential proclamation of December 26, 1917, and despite Act March 21, 1918, the Director General of Railroads was not authorized to take possession of land belonging to a railroad company which was not used in its business as a carrier; hence sale of such land under execution against the railroad company will not be enjoined on suit of the Director General, the company making no objection.

3. COURTS ⊂⇒508(3)—FEDERAL COURTS—JURISDICTION.

The federal courts, by virtue of their general equity powers, have jurisdiction to enjoin the enforcement of a judgment in the state courts upon the usual principles under which a court of equity will enjoin enforcement of a judgment.

4. RAILROADS ⊂⇒5½, New, vol. 6A Key-No. Series—FEDERAL COURTS—JURISDICTION.

A suit by the Director General of Railroads to enjoin sale of land owned by a railroad under execution issued on a judgment of a state court, on the theory that, having taken possession of the same, it was exempt from process under act of March 21, 1918, is a suit of a civil nature arising under the laws of the United States, etc., of which the federal District Court has jurisdiction, for it must be deemed that Act March 21, 1918, modified Jud. Code, § 265 (Comp. St. 1916, § 1242).

In Equity. Bill by the United States Railroad Administration, W. G. McAdoo, Director General of Railroads (Atlantic Coast Line Railroad), against Thomas S. Burch, as Sheriff of Florence County. On order to show cause why defendant should not be restrained and enjoined, etc. Preliminary injunction refused, etc.

Rutledge & Hyde, of Charleston, S. C., for complainants.

Logan & Grace, of Columbia, S. C., for defendant.

SMITH, District Judge. This matter came on to be heard under the order of this court made November 26, 1918, requiring the defendant to show cause on the 2d day of December, 1918, at 9 o'clock a. m., why he should not be restrained and enjoined from further proceeding to advertise or sell the property of the Atlantic Coast Line Railroad Company, described in Exhibit A, annexed to the bill of complaint herein. By consent of counsel the hearing was had this day, in lieu of being had on the day named in the said order, to wit, 2d day of December, 1918.

The defendant duly appeared and filed his return to the order to show cause, and counsel on both sides have been heard; the hearing being had upon the bill of complaint and the exhibits and the return to the rule to show cause and exhibits.

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The allegation of the complainant is that he is in actual physical possession of the property (sought to be sold by the defendant) under the terms of the statutes passed by the Congress of the United States, to wit, the act approved August 29, 1916, entitled "An act making appropriations for the support of the army for the fiscal year ending June thirtieth, nine hundred and seventeen, and for other purposes" (U. S. Stat. at Large, vol. 39, p. 645, c. 418), and of the proclamation of the President of the United States made the 26th of December, 1917, in pursuance thereof, and also of the act approved March 21, 1918, entitled "An act to provide for the operation of transportation systems while under federal control, for the just compensation of their owners and for other purposes."

So far as the papers now before the court are concerned, to wit, the bill of complaint and exhibits, and the return and exhibits, the facts appear to be that a final judgment has been recovered in the state court of South Carolina, in a cause of Travis Barnes, by his Guardian ad Litem, John J. Barnes, v. Atlantic Coast Line Railroad Co. This final judgment was recovered on the 18th day of March, 1918, and, upon an appeal therefrom by the defendant Atlantic Coast Line Railroad Company, the judgment was, by the Supreme Court of South Carolina, in August, 1918, affirmed (96 S. E. 530), and the remittitur affirming the same was forthwith duly filed in the court of common pleas for Charleston county.

Under the provisions of the state law of South Carolina, this final judgment was transcripted to the county of Florence, and, upon execution issued thereon in the county of Florence, a levy has been made upon certain real estate of the defendant the Atlantic Coast Line Railroad, in the county of Florence, and the same has been advertised for sale to satisfy the execution. To enjoin the sale under the execution, the bill of complaint in this cause has been filed.

It further appears that the action in the state court was begun on September 21, 1915, for a cause of action accruing on the 13th of February, 1915, and long anterior to the enactment by Congress of the statutes above referred to.

It also appears that the property levied on and advertised for sale consists of several pieces of land in the city and county of Florence, S. C. These tracts of land are mostly lots in the city of Florence and land adjacent thereto; and according to the statement of the tax agent of the defendant the Atlantic Coast Line Railroad, made in February, 1918, when the same were returned for taxation, this property so levied on was returned as real estate belonging to the Atlantic Coast Line Railroad, not necessary to the daily running of the road in Florence, S. C., and, as a conclusion of fact based upon the only reasonable inference that can be made from the papers before the court, these lots of land would not appear in any wise to be property or land essential or necessary to the performance of the transportation duties and operations of the defendant Atlantic Coast Line Railroad.

The question, therefore, is whether or not the complainant William G. McAdoo, as Director General of Railroads, is legally in possession of this property so as to be entitled to the protection of that clause of the

act approved March 21, 1918, which provides that no process, mesne or final, shall be levied against any property under such federal control.

[1, 2] The first question to be determined under the statutes is as to what property the President was entitled, through the Secretary of War, to take possession of and legally to hold, so as to be entitled to the benefit of such exemption from the levy of final process. Under the terms of the act of the 29th August, 1916, it is declared as follows:

"The President, in time of war, is empowered, through the Secretary of War, to take possession and assume control of any system or systems of transportation, or any part thereof, and to utilize same, to the exclusion as far as may be necessary of all other traffic thereon, for the transfer or transportation of troops, war material and equipment, or for such other purposes connected with emergency as may be needful or desirable." Comp. St. 1916, § 1974a.

An inspection of the whole statute, as well as of this clause, shows that the purpose and intent of the statute was to provide for the speedy and expeditious transportation of troops, war material, and equipment; and for that purpose to give possession of the systems of transportation to the government, through the Secretary of War, with power to use such systems for such transportation to the exclusion, as far as may be necessary, of all other traffic, either in passengers or freight, thereon. That is the purpose of the statute, and it is evident that the purpose of the statute giving such enlarged powers, to be exercised during the emergency of war, was not for the purpose of taking possession of any property which might be owned by the different corporations operating and owning systems of transportation, and which property was wholly independent of transportation uses, and neither incidental nor necessary for them, but was simply to allow the government to get control of everything necessary or appropriate for transportation purposes.

Under this statute, the President could authorize the Secretary of War only to take possession of such property as he himself is authorized to take possession of under the statute. The extent of his powers, and the definition of what property he was authorized to take possession of under the statute, would be necessarily a judicial question. All acts done and all property taken possession of within the adjudicated extent of the powers allowed might be a ministerial question; but as to the extent of those powers, and whether the powers were given, must always, under the Constitution of the United States, remain a judicial question, and one to be decided by the courts of the land.

Under the terms of this statute, the President issued a proclamation on the 26th of December, 1917, referring to the statute, and declaring that, through the Secretary of War, he took possession and assumed control at 12 o'clock noon on the 28th day of December, 1917, of each and every system of transportation, and the appurtenances thereof, located wholly or in part within the boundaries of the continental United States, and consisting of railroads, and owned or controlled systems of coastwise and inland transportation, engaged in general transportation, whether operated by steam or by electric power, including also terminals, terminal companies, and terminal associations, sleeping

and parlor car lines, elevators, warehouses, telegraph and telephone lines, and all other equipment and appurtenances, commonly used upon or operated as a part of such rail or combined rail and water systems of transportation, to the end that such systems of transportation be utilized for the transportation and transfer of troops, war material, and equipment, to the exclusion, so far as may be necessary, of all other traffic thereon.

The proclamation further proceeds that the possession, control, operation, and utilization of such transportation systems shall be exercised by and through William G. McAdoo, who was by the proclamation appointed and designated Director General of Railroads.

The language of this proclamation, assuming that the entire language is warranted by the powers extended to the President under the terms of the statute, and which powers he could not in any proclamation lawfully exceed, would not itself appear to include the property in question in these proceedings, unless it should be supposed to be included under the general designation of all other equipment and appurtenances, commonly used upon or operated as a part of such rail or combined rail and water systems of transportation. The outlying lots of land held by a railroad company as an investment, or which it may have purchased at some time and still continued to hold, would not appear to be included within any of the language of this proclamation. The position of counsel for the complainant is that the statute and the proclamation must be considered to include all property of a railroad. If this contention were correct, it would cover all moneys of the railroad in its possession, when possession was taken under the proclamation of the President. It would also cover all personal property, including stocks in industrial corporations, if any such were owned by the railroad at that time.

A fair construction of the statutes, and of the proclamation itself, however, would not appear to warrant any such inference that their provisions include such property. The language appears to be clearly limited to transportation systems, and to property which was used for transportation purposes, including therein all property fairly incidental or necessary for use in effecting such purposes. Separated, disconnected, unutilized tracts of land would not appear to come within this definition.

The later statute of March 21, 1918, would not appear to affect this conclusion. There is nothing in it which extends the powers of the President as to the character of the property he could take possession of under the previous statute. By section 9 it is provided that the provisions of the act of August 29, 1916, shall remain in force and effect except as expressly modified and restricted by the late act; and the President, in addition to the powers conferred by that statute, is given such other and further powers necessary or proper to give effect to the powers therein and theretofore conferred; that is to say, the President has only the powers in two acts conferred, and he is given such further powers as are necessary or appropriate to give effect to those powers. That is all.

If the purpose, intent, and meaning of the original statute was to give him power to take possession of only transportation facilities, there is nothing in the later act to extend the powers given him so as to give him the right to. take possession of disconnected property and property unnecessary for the purposes of transportation.

The proclamation of the President expressly provides that regular dividends theretofore declared, and maturing interest upon bonds, debentures, and other obligations, may be paid in due course; the said regular dividends and interest may be continued to be paid until and unless the said Director General shall from time to time otherwise, by general or special order, determine; and the later statute of 21st March, 1918, expressly provides a method by which the carrier might be paid a rental for the use of its transportation facilities, and the proceeds of such rental might be by the carrier devoted to the payment of its own obligations.

The present case presents the case of a creditor holding a final judgment, which should normally be paid forthwith, and with the right to the creditor, if the same be not paid, to enforce payment out of any property of the judgment debtor liable to judgment execution. To hold that the railroad company is by these statutes put in a position where it is not bound to pay any of its debts until the possession of its property is restored to it, although it may receive the rentals in the meantime, might mean that, while the railroad company would still continue to be in possession of the rents and profits and other results flowing from the property, its creditors, who are entitled to payment therefrom, might be greatly injured by their inability to collect payment for an indefinite period.

The case before the court, however, does not depend upon any inability or unfortunate position that the railroad is placed in, because its property has been taken possession of by the government, or at least so much of its property as is necessary for use for transportation purposes. Were the railroad company to file a bill in equity, stating that all of its property had been taken possession of by the government by virtue of these acts, and that it had no property or funds which could be applied to the payment of this debt, and that a creditor ought not to be allowed by the compulsory process of judgment and execution to sell away the property of the railroad company, and deprive it of its legal title, when through the action of the government it was powerless to make payment, it might present a question calling for the interposition of an injunction from a court of equity until the railroad company should be in a position to use its funds to meet the claims of its creditors.

In other words, if the railroad company were in position to claim that the effect of these statutes was a compulsory statutory moratorium, it might be in a position, in view of the great injury and injustice worked to it by permitting a creditor to assert his legal rights under execution—it might be in a position to have an injunction. That is not the case, however. The Atlantic Coast Line Railroad Company is not before the court. The Atlantic Coast Line Railroad Company asks no injunction. The injunction is sought on behalf of the Director

General appointed by the President's proclamation, upon the single ground that he is legally in possession of this property, and that, being in possession of this property, then under the terms of section 10 of the act of the 21st March, 1918, no final process could be levied upon it. The only question thus for the court is whether or not, under the terms of the statutes of the United States, the complainant in this case is legally in possession of the property, so as to entitle him to the benefit of the exemption given by the act from the levy of final process. It does not appear to the court that the property is property of which, under the terms of the statute, the President was authorized to take possession. If the President was not authorized to take possession, then he could not authorize the Secretary of War or the Director General to take possession, and any possession taken by them would be unlawful and would in no wise divest the rights of other parties.

The complainant being thus not in legal possession of this property, and the property being, in the opinion of this court, not property of which he could legally take possession, under the terms of the statutes, it is not property which, under the terms of those statutes, is exempt from the levy of final process; and it follows from that, that the injunction should be refused.

If it in any wise appeared to the court that the Atlantic Coast Line Railroad Company was itself bona fide seeking relief because it had been actually divested of the possession of the property by the act of the government, and that it had in consequence been deprived of the power and means to pay its creditors, the case would be otherwise.

But from the facts the court must infer that the railroad company is amply able to meet its debts, and, if such be the case, then the effect of an injunction now would be to permit the railroad company, if it desired, to use the position of the Director General of Railroads as a screen to shield it from the just claims of its creditors.

[3, 4] The defendant in his return to the rule has raised the question that this court has no jurisdiction of the cause, and cannot enjoin a sale under execution under a judgment in a state court. Inasmuch as this question is a question arising in a case which asks for the enforcement of a right claimed to exist and be given under the terms of an act of Congress, it is evidently an action of a civil nature in equity, brought by an officer of the United States authorized to sue, and arising under the laws of the United States, where it appears upon the face of the bill of complaint that the right claimed by the plaintiff and sought to be enforced arises by virtue of and under a statute of the United States.

The question whether or not final process can be levied against this property is one that arises under the very terms of the act of March 21, 1918; nor is the position that this court has no jurisdiction to stay the execution of a judgment recovered in the state court well taken. It has been laid down that the United States courts, by virtue of their general equity powers, have jurisdiction to enjoin the enforcement of a judgment in the state court upon the usual principles under which courts of equity will enjoin the enforcement of a judgment. Simon v. Southern Ry. Co., 236 U. S. 115, 35 Sup. Ct. 255, 59 L. Ed. 492;

Union Ry. Co. v. Illinois Cent. R. Co., 207 Fed. 745, 125 C. C. A. 283; Schultz v. Highland Gold Mines Co. (C. C.) 158 Fed. 337; Linton v. Safe Deposit & Title Guaranty Co. (C. C.) 147 Fed. 824.

Further, the special statutory exemption from process, created by the act of 21st March, 1918, must be construed, in connection with the provision of section 265 of the Judicial Code of the United States (formerly section 720, U. S. R. S.; Comp. St. 1916, § 1242), as modifying the language of that section, and creating another exception, under which the attempted enforcement of the mesne and final process from a state court may be restrained in proper cases.

It would appear, therefore, that the court has jurisdiction of the proceedings, although, upon consideration of the facts of the case, it does not appear to be a case in which a preliminary injunction should be issued; and the motion for a preliminary injunction is accordingly refused, and the injunction contained in the order of this court, dated November 26, 1918, is hereby vacated.