LINTON et ux. v. SAFE DEPOSIT & TITLE GUARANTY CO. OF KITTAN-
NING et al.

(Circuit Court, W. D. Pennsylvania.   October 10, 1906.)

No. 31.

1. TRUSTS—VALIDITY—ACT PA. JUNE 8, 1881—FAILURE TO RECORD DECLARA-
TION BY GRANTEE.
   Act Pa. June 8, 1881 (P. L. 84), which provides that a deed absolute on its face shall not be reduced to a mortgage except by a defeasance in writing signed, sealed, and delivered at the time and recorded within 60 days, does not render void or ineffective an unrecorded declaration of trust executed by an absolute grantee to the grantor, by which it declared that it held the property in trust for certain purposes plainly expressed therein, merely because one of such purposes was to sell lots from the property and from the proceeds to repay itself certain advances; and the trustee cannot treat such instrument as a defeasance merely and assert its legal title to avoid the execution of the trust.
   [Ed. Note.—For cases in point, see vol. 47, Cent. Dig. Trusts, § 33.]

2. JUDGMENT—MATTERS CONCLUDED—IDENTITY OF ISSUES.
   Where the issues in two suits between the same parties are different, a determination in the first of matters in issue in the second, not necessary to the decision, is not conclusive on the parties in the second.
   [Ed. Note.—For cases in point, see vol. 30, Cent. Dig. Judgment, §§ 1263–1268.]

3. COURTS—FEDERAL COURT—INJUNCTION—STAYING PROCEEDINGS IN STATE
COURT.
   Rev. St. § 720 [U. S. Comp. St. 1901, p. 581], which forbids the federal courts to grant injunctions staying proceedings in a state court, does not prevent the granting by a federal court of an injunction restraining a party from making a wrongful or inequitable use of an execution issued on a judgment of a state court.
   [Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Courts, §§ 1418–1422.
   Enjoining proceedings in state courts, see notes to Garner v. Second Nat. Bank of Providence, 16 C. C. A. 90; Central Trust Co. of New York v. Grantham, 27 C. C. A. 575; Copeland v. Bruning, 63 C. C. A. 437.]

In Equity.   On motion for preliminary injunction.

Thomas Watson, for the motion.
A. A. Patterson, opposed.

ARCHBALD, District Judge.*   This is a bill to establish a trust and secure an accounting.   The safe deposit company defendant holds lands which were conveyed to it by Mrs. Linton and her husband, on

*Specially assigned.

which it was to make and did make advances; repayment being provided for by the sale of lots, into which it was divided, and by the leasing for gas, and otherwise, all of which the company undertook to see to with their concurrence. The trust is evidenced by a writing, duly sealed and acknowledged by the company. The legal effect of it, however, is controverted, and it is out of this that the litigation grows.

As incident to the general purpose of the bill, an injunction is asked for at this time to stay execution on a judgment against Mrs. Linton, held by the defendant Colwell, which has been levied on the lands conveyed by her to the company. This judgment was originally secured by other parties, and has been the subject of considerable litigation. Lewis v. Linton, 201 Pa. 234, 53 Atl. 999, Id., 207 Pa. 320, 56 Atl. 874. It is superior in lien to the conveyance to the company, and on it whatever interest Mrs. Linton has will be wiped out, unless a sheriff's sale is prevented. Mr. Colwell is a director of the company, and it is charged that the judgment has been secured by him and execution issued, for the purpose of forestalling and cutting out the existing controversy. This is denied, and it is claimed that he purchased individually. But it is a fact that, upon the refusal of Mrs. Linton to give a general power of attorney to the safe deposit company to sell and dispose of these lands as the directors saw fit, and other differences, they threatened to get hold of this judgment and compel it, following which the judgment was purchased and marked to the use of Mr. Colwell; payment being made by the attorney of the company, after negotiations for it by the president. For the present at least, upon this showing, the company must be regarded as the real owner; or, if not that, I must conclude that Mr. Colwell is allowing himself to be used to defeat the trust, in the interest of the company, with which he is colluding. As a director and officer, he could hardly be expected to act contrary to its interests, if indeed he would be allowed to. And the complacence with which execution is suffered by the company, although directly assailing its title, and the resistance which is made to the efforts of Mrs. Linton to stop it, leave no doubt as to the relation between the parties and their common purpose.

The company, however, denies the trust, and claims to own the property absolutely. This position was not taken at the first, and the parties for a time worked together under it. One defense, indeed, is that the company have done all that in any event could be required. But the plaintiffs not being compliant, and new directors having come in, they seem to have thought better of the matter, and now propose to hold on, denying further accountability. How they are able to persuade themselves into this, in the face of the existing declaration, it is difficult to appreciate. It is said that the plaintiffs put the property into the hands of the company as security for advances, which made the transaction a mortgage, the accompanying declaration being in effect a defeasance, which in order to be available was required to be put on record, according to the state law, within 60 days (Act June 8, 1881 [P. L. 84]), but was not recorded for 16 months, which thus gave them the property. The plaintiffs contend that the delay in recording was at

the direct suggestion of the company, so as not to stand in the way of sales, and that it is a fraud to take advantage of the confidence. But this is denied, and is not material. Outside of and beyond it, by its solemn act and deed, under its corporate seal, the company has declared that the land was conveyed to it in trust for certain purposes. This it is bound in conscience to respect, and will not be permitted to repudiate, or get out of, on any sophistry. The act of 1881 seems to hold out a temptation, but only by a misconception. This act may be responsible for much, but there is nothing to countenance what is now attempted to be made out of it. It is an act to prevent fraud, and not to further it, and is not therefore to be made a means to that end. It simply provides that a deed absolute on its face shall not be reduced to a mortgage, by anything short of a defeasance in writing, signed, sealed, and delivered at the time, and recorded within 60 days. Within these limits it is binding, but beyond them it does not undertake to go. Applying it here, the declaration of trust, not having been put on record for 16 months, cannot be used to convert the plaintiffs' deed into a mortgage, if such an attempt should be made. But the defendants do not stop at that. Because it is ineffective for such a purpose, it is sought to be made of no effect at all. This is bad logic, and worse law. It by no means follows that, because it cannot be made to play the part of a defeasance, it has no further force. The plaintiffs in fact make no such claim for it. It is the defendants who assert this of it, setting it up in that character in order to knock it down again. In terms it is a declaration of trust, and as such it is to be reckoned with. By it the company declares that it holds the lands conveyed to it for certain definite purposes, which are expressed in plain terms, and must be carried out. In addition to the $6,500 mortgage, which had been a lien upon the property, but which the company had satisfied, advances were to be made to Mrs. Linton to the extent of $20,000 more, all of which were to be met by sales, to be made by the company, from time to time, at prices satisfactory to the plaintiffs. The proceeds were not, however, to be devoted to such repayment immediately, but, after taking care of interest and taxes, were to go to Mrs. Linton so long as the property unsold was sufficient security for the loans against it. And the plaintiffs also had the right to a reconveyance at any time, upon paying the advances made with interest and reasonable costs and charges. There is nothing difficult to comprehend in this, either in general scheme or details. Nor has anything been suggested why it should not be complied with and carried out to the end, the same as it was started to be. The trust is active, and if the duties have become irksome, by reason of disagreements or otherwise, it is possible that, upon application to the proper authority, the company will be permitted to lay down the trust and have another substituted, to whom the property can be turned over. But that is as far as it can expect to go. The trust remains and must be respected; nor can the company deal with the land, as it will, without regard to anything of the kind, simply because it holds the legal title.

It is said, however, that this is in conflict with the decision in Safe Deposit Co. v. Linton, 213 Pa. 105, 62 Atl. 566, a case between the

same parties, over the same matter, where the company's title was held to be absolute. There may be expressions of opinion in that case which lend some countenance to this idea, but they are to be interpreted, as always, in the light of the question litigated. The bill was for the partition of one of the tracts in controversy, an undivided two-thirds of which was conveyed to the company by Mrs. Linton, as part of this transaction; the other one-third being retained by her. The court sustained the bill, and ordered a division, based on the absolute character of the deed, which the declaration of trust was held ineffectual to qualify. With this no fault can be found. The deed undoubtedly conveyed a fee, without which the sales contemplated could not be made, and, the tract being held in common, partition was necessary to clear the way for this, by giving the company a several, instead of an undivided, interest. It is true that Mrs. Linton resisted the bill, and set up the trust, and the court, adopting the contention of the company, held that the deed and the declaration, taken together, constituted a pledge of the land for the money advanced, amounting to an attempt at a mortgage, made ineffectual by the act of 1881, because of the failure to properly record the defeasance. And it was also held that it was not a fraud on the part of the company to use their deed in this way. But it was not necessary to a decision to assign this or any other particular character to the transaction, it being sufficient that the court found nothing in the declaration of trust to stand in the way of a partition. This was the real issue and controls the judgment rendered, rather than the reasons which happen to be given for it. Of this we are admonished by Jackson v. Thomson, 215 Pa. 209, 64 Atl. 421, a case quite suggestive of the one in hand, in which an ejectment to enforce a trust ex maleficio was held not concluded by a prior bill, between the same parties and growing out of the same transaction, to have a deed absolute on its face declared collateral security for a mortgage, which was defeated by the act of 1881; the issue being different, notwithstanding the matters injected by the argument of counsel.

It is further said that the alleged collusion between the defendants, and the charge that Colwell is not the real owner of the judgment, was set up by Mrs. Linton in her application to the common pleas of Armstrong county, where the judgment is entered, to have it opened; and that it was disposed of, contrary to her contention, by the refusal of the court to grant the application. An appeal has been taken from that decision, whatever it was, and it is not therefore final. But, without regard to that, the answer made to the petition to open denied the charge, and, no evidence being given to sustain it, it fell, and with it all that was dependent upon it. And this, as I understand it, was all that was decided. The evidence which was lacking there, however, is now produced, with the result, that a different conclusion is reached upon the question which was so left open.

The right of the court to intervene by injunction, to stay execution in the state court, is also challenged; this being expressly prohibited, as it is claimed, by the federal law. Rev. St. § 720 [U. S. Comp. St. 1901, p. 581]. But it was decided otherwise in Marshall v. Holmes,

141 U. S. 589, 12 Sup. Ct. 62, 35 L. Ed. 870, and Linton v. Mosgrove (C. C.) 14 Fed. 543; the latter being a case in this court upon much the same facts, in which the same plaintiffs figured, which is conclusive upon us here.

The motion is granted, and an injunction is directed to issue as prayed for.