THE FIRESTONE TIRE & RUBBER CO. et al. v. MARLBORO COTTON MILLS.

(District Court, E. D. South Carolina. January 12, 1922.)

1. **Judgment ⊛112—Default after proper service is admission of complaint.**

    A default by defendant, after being properly served, is an admission of the allegations of the complaint which binds him, though such allegations are untrue.

2. **Corporations ⊛668(4)—Foreign corporation bound by service on agent under state law.**

    A foreign corporation entering South Carolina to do business is bound by Code Civ. Proc. S. C. § 184, subd. 1, authorizing service on any agent, especially where the agent, though one of limited authority, forwarded the summons to it.

3. **Courts ⚙═509—Federal court cannot open default judgment in state court.**

Even though a default judgment against a foreign corporation, which was duly served, presents a hard case against which equity would relieve, such relief can be obtained only from the state court, since the United States court cannot reopen the judgment in the state court and award a new trial therein, but could only enjoin enforcement of the judgment, which would involve a determination of the merits of the case.

4. **Judgment ⚙═419—Corporation not served held not entitled to equitable relief.**

Where corporations formed in different states with substantially the same names were engaged in business with close relationships between them, and judgment by default was rendered against one of the corporations for breach of a contract made by the other, which was not served with process, the corporation not served is not entitled to equitable relief against the judgment, since it is void as to such corporation.

5. **Courts ⚙═508(3)—United States courts can enjoin a state judgment at law.**

A United States court of equity which has jurisdiction over the parties to a cause has the right to enjoin the enforcement of a final judgment at law in the state court.

6. **Execution ⚙═358—Supplemental proceeding is quasi equitable.**

In South Carolina, where the Code of Civil Procedure has abolished the distinction between law and equity, but where the court is authorized by section 225 to relieve against a judgment obtained through mistake, etc., or through fraud or duress, the supplemental proceeding provided to subject to a judgment assets which cannot be reached by execution is a quasi equitable proceeding.

7. **Courts ⚙═508(3)—Quasi equitable supplemental proceedings in state court not enjoined.**

A United States court sitting in equity will not enjoin supplemental proceedings in the state court to enforce a default judgment, since the state court is a court of concurrent jurisdiction, and the proceeding is of an equitable nature, in which the judgment debtor can present all equitable grounds for relief against the judgment.

In Equity. Suit by the Firestone Tire & Rubber Company and another against the Marlboro Cotton Mills to restrain the enforcement of a default judgment. On complainants' motion for temporary injunction and defendant's motion to dismiss the bill. Both motions refused.

Tillett & Guthrie, of Charlotte, N. C., D. W. Robinson, of Columbia, S. C., and Amos C. Miller, of Chicago, Ill., for plaintiffs.

McColl & Stevenson, of Bennettsville, S. C., for defendant.

SMITH, District Judge. This matter comes up upon an application for a temporary injunction. Due notice of the application was given and counsel for all parties interested have appeared and filed their returns and affidavits, and the motion has been heard upon the pleadings and affidavits in the cause. At the same time was heard a motion by counsel for the defense to dismiss the complainants' bill of complaint. Counsel for all parties interested have been fully heard.

According to the bill of complaint, the complainants are two separate corporations, both having practically the same name. The name of one complainant is "The Firestone Tire & Rubber Company." The name of the other complainant is "Firestone Tire & Rubber Com-

⚙═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

pany." There are two separate corporations of the same name. One is a corporation under the laws of the state of Ohio, with "The" before its name, and the other is a corporation under the laws of the state of West Virginia, without this "The."

The West Virginia corporation was organized some time about August, 1900, and it maintained a plant for the manufacture and sale of tires in the city of Akron in the state of Ohio, and also carried on business in several other of the states of the United States for the sale of tires and accessories thereto.

In the year 1909 the other corporation of the same name was organized under the laws of the state of Ohio, and then purchased and had conveyed to it by the West Virginia corporation all the real estate and personal property of the West Virginia corporation in the state of Ohio devoted to the manufacture of tires and accessories. After this sale the Ohio corporation, whose capital was $75,000,000, seems to have confined itself largely to the manufacture of tires and accessories. The capital of the West Virginia corporation was only $50,000, of which the entire capital stock except a few shares were owned by the Ohio corporation.

The West Virginia corporation seems to have confined itself to the selling of tires and accessories, and not to have engaged further in manufacture, and, as it was practically owned by the Ohio corporation, it seems in substance to have been a selling agent used by the Ohio corporation to dispose of its manufactured product, and their relations seem to have been of the closest character.

In November, 1919, the Ohio corporation entered into an agreement with the Marlboro Cotton Mills, the defendant herein, a corporation of South Carolina, for the purchase of a large amount of cord fabric. In August, 1921, the Marlboro Cotton Mills instituted an action in the court of common pleas for the county of Marlboro against the Firestone Tire & Rubber Company for a breach of this contract, praying judgment against the Firestone Tire & Rubber Company in the sum of $114,795.65. The contract upon its face showed that it was with the Firestone Tire & Rubber Company, Akron, Ohio.

The title of this action in the court of common pleas for Marlboro county is "The Marlboro Cotton Mills, a Corporation, Plaintiff, v. Firestone Tire & Rubber Company, a Corporation, Defendant." In the body of the complaint it is stated that the defendant Firestone Tire & Rubber Company is a corporation organized under the laws of one of the states of the American Union. It is not stated either in the title or in the body of the complaint whether the corporation sued is the corporation organized under the laws of the state of West Virginia, or that organized under the laws of the state of Ohio.

The summons in this action in the county of Marlboro was on the 11th of August, 1921, attempted to be served by delivery thereof to one C. T. Ernest, stated in the affidavit of service to be an agent of the Firestone Tire & Rubber Company, the defendant corporation in the action. Ernest, it appears, was then employed by the Firestone Tire & Rubber Company of West Virginia as a salesman. He was still in their employ, although the term of his employment apparently would

have expired in a day or so. Ernest sent the summons so served upon him by mail to the manager of the Firestone Tire & Rubber Company in Charlotte, N. C., where it was received by some one in the office by the name of L. O. Padgett, who appears to have had charge of that office. Exactly when Padgett received it does not appear, but the bill of complaint alleges it was one week prior to August 22, on which day he wrote in the name of Firestone Tire & Rubber Company to McColl & Stevenson, the attorneys for the Marlboro Cotton Mills, stating that on August 11 they had served a summons on one of the company's traveling salesmen, Mr. C. T. Ernest; that Ernest was not now in the employ of the Firestone Tire & Rubber Company; that any notice against that company should be served on one of its executives, and they would therefore ignore the same.

The bill of complaint alleges that the office in Charlotte was an office of the West Virginia corporation, and that Padgett was an employee of that corporation; yet the letter written by Padgett would appear to be on stationery of, and emanate from, the Ohio corporation. This summons, therefore, was in the hands of the person in charge of the office of the West Virginia corporation in Charlotte, in ample time for it to have appeared and taken any defensive action, if it had realized the necessity for so doing.

Padgett, the person who seems to have been in charge of the office in Charlotte, N. C., was wholly to blame for failing to inform his employer and in undertaking to decide that he would take no notice of this legal summons. Its delivery to and knowledge of by a superior officer or employee of the West Virginia corporation therefore fully appears.

Messrs. McColl & Stevenson seems to have made no answer to the letter of Padgett. Perhaps they were not legally bound to do so; yet in equity their position would have been much better, knowing the amount involved, had they answered, notifying Padgett of the danger, and that he, a mere employee, should notify his employer.

No answer or appearance being served by any one to this suit of the Marlboro Cotton Mills, application for judgment by default was made at the next term of court in October, 1921. No one appearing for the defendants, certain ex parte issues were submitted by the presiding judge to a jury, viz.:

First. Was C. T. Ernest, the person served with the summons in this case on August 11, 1921, an agent of the Firestone Tire & Rubber Company, on that date?

Second. Was the Firestone Tire & Rubber Company doing business in South Carolina on or before August 11, 1921?

No person appearing for any defendant, the jury returned a verdict in the affirmative on both issues and against the defendant for $121,492.05. Thereupon judgment was entered in favor of the plaintiff, the Marlboro Cotton Mills, against the Firestone Tire & Rubber Company, defendant for the amount of that verdict; and on the same date application, without any notice to the defendant, was made to the presiding judge of the court of common pleas at his chambers in Dillon, S. C., under supplementary proceedings, and an order was

made by him on that date, requiring certain persons named to appear before the court and to answer concerning any indebtedness that they might owe to the defendant, the Firestone Tire & Rubber Company, and ordering further that the defendant should appear before that court on the 26th day of October, 1921, and show cause why a receiver should not be appointed of all its property in South Carolina, further providing that all debtors of the defendant and all of its dealers in automobile tires should be enjoined from paying any money or accounts to the Firestone Tire & Rubber Company or any one in its behalf.

Thereupon this bill of complaint was filed on the 24th day of October, 1921, in this court, praying an injunction against the defendant, its agents and attorneys, from proceeding by execution, or procuring or seeking to procure the appointment of a receiver, or by any other means from enforcing the judgment entered up in the court of common pleas for Marlboro county; and the case has been heard upon an application for a temporary injunction to that effect. At the same time it has been heard on the defendant's motion to dismiss the bill.

A mere inspection of the pleadings shows that the pleadings in the state court and the judgment entered thereon are very ambiguous. The defendant is sued simply as the Firestone Tire & Rubber Company and alleged to be a corporation of some state. The contract upon which action is brought in the state court is upon the face of it apparently a contract of the Ohio corporation, not of the West Virginia corporation. According to the bill and affidavits, the person upon whom service was made of the summons so as to secure service upon the defendant corporation was a salesman of the West Virginia corporation. Presumably the judgment that should have been entered in the state court under the pleadings should have been a judgment against the Ohio corporation. No service, however, was made or appears to have been claimed to have been made upon any one upon whom service could be made so as to bind the Ohio corporation.

The subsequent proceedings, in the nature of supplementary proceedings under the Code of Procedure of the state of South Carolina, appear also to be directed against the West Virginia corporation, although not even in these proceedings is there anything set up to show specifically that the West Virginia corporation was in any way claimed to be the corporation bound by the judgment.

This ambiguity in the first instance is the result of the action of the complainants in using the same name and with relations so close that the public generally might well be misled as to the corporations being the same. The letter of Padgett to McColl & Stevenson, although claimed to be a letter by an employee of the West Virginia corporation from an office of that company, bears every earmark of emanating from the Ohio corporation.

In the second instance, it is the fault of the plaintiff, the Marlboro Cotton Mills; for the contract with it was sufficient to show it that the corporation responsible to it was the corporation carrying on business at Akron, Ohio; and there was no reason why the plaintiff should

not have so stated in the title to its complaint, and so alleged in the body of the complaint, and thus distinctly identified the defendant. The great fault, of course, is that of Padgett, the employee of the West Virginia corporation, in undertaking to wholly ignore the summons served upon Ernest, when, upon the face of it, it might bear an interpretation that the judgment sought to be obtained was against that corporation.

The whole proceeding presents upon the face of it such a mingled condition of confusion and uncertainty as might well call upon any court of equity, especially in the recovery of so large a judgment as in this case, to suspend action, and give to the parties affected an opportunity to interpose any meritorious defense they might have.

The grounds for consideration of some kind presented by the complainants are no doubt strong. It seems a startling result that a judgment by default for so large an amount obtained against a corporation through the inexcusable carelessness and conceit of a subordinate employee should be allowed to be enforced so immediately after its entry, when the defendant can show any meritorious defense on the merits for consideration. Whatever legal question might exist as to the sufficiency of a service on a mere salesman to bind a foreign corporation (notwithstanding Sellers v. Chemical Works, 76 S. C. 343, 56 S. E. 978), yet, equitably speaking, the object of a service, which is notice, was attained when the summons was delivered to the West Virginia corporation's officer in Charlotte. Too, it would seem equitably that Messrs. McColl & Stevenson, as solicitors of high standing, should have answered the letter from Padgett. They knew they were seeking for their client a judgment for a large amount against a corporation, which can only know and act through its employees. They must have known that corporations are frequently the victims of the folly or indifference of those employees. They must have known the ignorant folly of Padgett's letter and its disastrous consequences to his employer. They cannot be supposed to have desired to procure a judgment for their client save after the defendant had had its fair day in court. It would seem, therefore, from the standpoint of a court of equity they should have answered Padgett's letter, notifying him of the legal effect of a summons, and that he should lay the matter before his employer.

It also seems a most inequitable result, under the circumstances of this case, that a judgment on a contract by one corporation should be allowed to be enforced against the property of a wholly distinct corporation.

There does not appear to have been any fraud in the procuring of the judgment. There is not the slightest evidence of any collusion or fraud on the part of the Marlboro Cotton Mills, and that company and its attorneys evidently believed in good faith that the Marlboro Cotton Mills was entitled to its claim. The complaint in the state court on its face presented a good cause of action. Nor is the judgment, on the face of it, an unconscionable one. The state court evidently required evidence of the amount of damage before the jury returned its verdict. It is true that the proceeding where no one appears to de-

fend is usually a very perfunctory one, and the evidence of a very unscrutinized character. That is too frequently the case in default judgments.

The real complaint of the present complainants is that a "snap" judgment has been recovered against them without an opportunity to interpose their defenses. Their defenses may or may not be ultimately successful. They state it is meritorious, but in any event it is on the face a legal controversy in which each side believes in its merit, and it will take a court and jury to decide upon the evidence. No fraud has been practiced; the usual course of procedure has been followed; only the judgment is a very large one; the complainants believe they have a good defense, and they have been deprived of any opportunity to set up that defense, but how? Not by any fraud or procurement of the other side, but by the inexcusable carelessness and conceit of an employee of the West Virginia corporation, viz. L. O. Padgett. The only thing to be alleged against this is that the action of Messrs. McColl & Stevenson in not replying to Padgett's letter was not what from the viewpoint of a court of equity was to be expected of them.

[1] So, too, as to the ambiguity of the pleadings in the state court and the hardship of the West Virginia corporation being adjudicated liable on the contract of the Ohio corporation. The plaintiff had the right to make the claim that the West Virginia corporation was responsible. If that was denied by an answer, and the case went to trial, and it was decided against the West Virginia corporation, no matter how hard and unjust it may have seemed, that corporation would have to submit. A default is an admission. By a default in a proceeding at law the defendant admits the assertions of the plaintiff. If the West Virginia company was properly served to give jurisdiction, its default was the same as an admission that the contract was one for which it was responsible.

[2] From all the pleadings and affidavits it appears that C. T. Ernest, the person served, was in the employ of the West Virginia corporation when the summons was delivered to him on August 11, 1921. The Code of Procedure of South Carolina provides (section 184, subd. 1) that service of the summons on a foreign corporation can be made by delivering a copy to any agent of the corporation. The Supreme Court of South Carolina has decided that this means any agent, no matter how limited the scope of his agency. Jenkins v. Bridge Co., 73 S. C. 526, 53 S. E. 991; Sellers v. Chemical Works, 76 S. C. 343, 56 S. E. 978; McNeill v. Electric Storage Battery Co., 109 S. C. 326, 96 S. E. 134.

It may seem very hard that the service on a mere salesman should be effectual to bind a large corporation, but "Ita scripta lex est," and in this case the salesman did his duty, for on the 13th of August he forwarded the summons to his principal.

In McSwain v. Adams, 93 S. C. 104, 76 S. E. 117, Ann. Cas. 1914D, 981, the court holds (although not necessary for the decision in that case) that, inasmuch as a foreign corporation (except those engaged in public interstate commerce) can at the mere will of a state be excluded from its territory, if it enters it, it does so accepting all the

laws of the state as a condition of leave to enter, which would include the law providing that service upon any agent of even limited and special scope and authority shall bind the corporation.

In any view, the summons did find its way to the corporation from the employee served, and the great object of notice was accomplished. Further, it appears from the bill of complaint that the West Virginia corporation has property in the state of South Carolina subject under the laws of that state to attachment, and jurisdiction to the extent of that property would thus have been acquired. It is not the case of a corporation which has neither property nor any business nor agency within the jurisdiction. The objection to the lack of jurisdiction of the state court on that ground is more technical than substantial.

In the last analysis, the bill of complaint and affidavits present only what appears to be an exceedingly hard case, due to the almost criminal folly and conceit of the West Virginia corporation's own employee, Padgett.

[3] But, assuming it to be a hard case and one that a court empowered to relieve it would relieve against, no application has been made to the state court for relief. Nothing of all this has been brought to the attention of the state court in which the judgment was recovered, and which would appear to be the court that should naturally be applied to for relief against a judgment recovered under circumstances that would warrant its reopening to allow a meritorious defense to be interposed.

This court cannot reopen a judgment in a state court. It cannot award a new trial in a cause pending therein. The object of the present bill of complaint is not to afford the defendants in the state court an opportunity to interpose their defenses in the cause in that court. That is manifestly impossible for this court to accomplish. The object is nominally to grant an injunction, but practically to have this court declare the judgment in the state court invalid and null, or at least one that a court of equity will not permit to be enforced.

Upon the face of the bill, this court has jurisdiction of the parties and of the cause, as the requisite diverse citizenship exists, and the amount involved in the controversy is in excess of the jurisdictional minimum.

[4] So far as the Ohio corporation is concerned, it does not appear what separate equity it has in this matter. It seems to have no property of its own in the state of South Carolina, apart from the interest it has indirectly as a large stockholder in the West Virginia corporation. That interest is not one which they are authorized in a proceeding of this kind to separately enforce as a stockholder when the West Virginia corporation itself is a party and capable of setting it up, and no fraud or collusion is alleged between the Marlboro Cotton Mills and the West Virginia corporation.

Inasmuch as the claim is that the party served with the summons was not an employee of the Ohio corporation, and that the judgment in this case is null and void as against the Ohio corporation, and that corporation has no property in the state of South Carolina against which this judgment is sought to be enforced by the state court, it

would not appear that the Ohio corporation has any equity for which it can call upon this court to interfere. If any attempt should at any time be made within or without the limits of the state of South Carolina to enforce this judgment as one against that corporation, it can set up its defense and show that no jurisdiction was ever acquired over it by any service upon any one upon whom legal service could be made so as to bind it by a judgment in the courts of this state.

[5] This would leave this cause to be considered from the aspect of a suit between the West Virginia corporation and the Marlboro Cotton Mills. It has unquestionably been held by controlling authority that a United States court of equity, where it has jurisdiction of the parties to the cause, has the right as a court of equity upon grounds of equitable cognizance to enjoin the enforcement of a final judgment at law in the state court, upon the usual principles under which courts of equity will enjoin the enforcement of a judgment. Simon v. Southern Ry. Co., 236 U. S. 115, 35 Sup. Ct. 255, 59 L. Ed. 492; Union Ry. Co. v. Illinois Cent. R. Co., 207 Fed. 745, 125 C. C. A. 283; Schultz v. Highland Gold Mines Co. (C. C.) 158 Fed. 337; Linton v. Safe Deposit & Title Guaranty Co. (C. C.) 147 Fed. 824.

If the right is one derived from equitable jurisdiction, it should logically follow that the state courts sitting in equity would have the equal right to enjoin the enforcement of final judgments at law in the federal courts. This would very easily lead to the most unfortunate and embarrassing friction. No federal decision of any controlling character appears to have conceded this necessary sequence. Nor has any federal decision of controlling character held that a federal court sitting in equity has the power on equitable grounds to stay the enforcement of the decree of a court of equity of concurrent jurisdiction for unconscionableness or on any ground on which courts of equity stay the enforcement of judgments at law.

[6] By the Code of Procedure of the state of South Carolina, the distinction in procedure between law and equity has been abolished. Where it is sought to enforce a judgment at law against property which cannot be reached by an execution, the proceeding followed is what is called a proceeding supplementary to execution. That proceeding is in substitution of the old proceeding by bill in equity for the purpose. It is in all substantial respects a proceeding in equity. The jurisdiction exercised by the state court under such proceedings is an equitable one. The proceeding is of course supplementary and limited. It cannot be used in lieu of a proceeding of an original nature in equity to adjudicate the rights of third parties, such as a proceeding to set aside deeds for fraud or reach assets claimed by third parties. Its purpose is to avoid the delay of a discovery, and reach assets admittedly those of the defendant, but which cannot be reached by an execution at law.

Dealing with a similar proceeding, where a bill was filed in the United States Circuit Court to enjoin a void judgment in the state court, the Supreme Court of the United States, in Mutual Reserve Association v. Phelps, 190 U. S. 147, 23 Sup. Ct. 707, 47 L. Ed. 987, uses the following language:

"It was not in the strictest sense of the term a creditors' bill. It did not purport to be for the benefit of all creditors, but simply a proceeding * * * to obtain satisfaction thereof, satisfaction by execution at law having been shown to be impossible by the return of nulla bona. It is what is known as a supplementary proceeding, one known to the jurisprudence of many states, and one whose validity in those states has been recognized by this court. * * * It was a mere continuation of the action already passed into judgment, and in aid of the execution of such judgment. * * * Being a mere continuation of the action at law, and not removable to the federal court, the latter had no jurisdiction to enjoin the proceedings under it."

Apart from this particular proceeding, the state courts have also full equitable powers. Where a judgment has been obtained through mistake, surprise, inadvertence, or excusable neglect, the court can at any time within a year from its recovery open and set it aside. Code of Procedure of S. C. § 225.

In cases where a judgment may be attacked on other grounds of equitable cognizance, such as fraud, unconscionableness, duress, or lack of jurisdiction, the state courts, as courts of equity, retain their full equitable jurisdiction unaffected by the one-year limitation in section 225 of the Code of Procedure. Ex parte Carroll, 17 S. C. 446; Ex parte Gray, 48 S. C. 566, 26 S. E. 786.

[7] In the present case this quasi equitable proceeding in the nature of a supplementary proceeding has been instituted in the state court to enforce the judgment recovered by the Marlboro Cotton Mills against the Firestone Tire & Rubber Company. The Firestone Tire & Rubber Company has been ruled in the ordinary course of procedure to show cause why its credits should not be applied to the payment of the judgment and a receiver be appointed of its property in South Carolina for that purpose. The state court is now entertaining that very application. A day has been set in that court for the hearing. There is no reason why either or both of the complainants should not appear before the state court, and there set up their equitable defenses to the enforcement of the judgment. If the judgment, properly construed, is not a judgment against the West Virginia corporation, that corporation can appear, make the question, have the judgment defined as a judgment against the Ohio corporation, and then have the rule discharged, so far as any property of the West Virginia corporation is concerned.

As the evidence shows that the person served was an employee of the West Virginia corporation, the Ohio corporation may ignore the whole proceeding, or, if it sees fit, appear and apply to have the judgment vacated as having been rendered without any such service as would give the court jurisdiction of that corporation.

The state court is in actual consideration of a matter of an equitable nature pending before it, and this court of concurrent jurisdiction is asked by its injunction to terminate the state court's hearing of the matter set for a hearing and practically rule that for reasons, not of paramount federal law, but of equity satisfactory to the chancellor in the federal court, the chancellor in the state court shall be summarily stopped from the consideration of an equitable controversy of which

·that court is now seized—at the least, a most delicate and irritating attitude for any court of concurrent jurisdiction to take.

Why is it necessary or competent to apply to this court, a court of concurrent jurisdiction, to set up their equities here and have this court by its injunction stay the state court in medias res?

To determine whether the judgment is unconscionable on the merits would require a trial of the original controversy on a breach of the contract—the very controversy raised by the original complaint in the state court. It would in effect be transferring the action to this court as much as if the original action had been removed. That action could have been removed by the defendant the Firestone Tire & Rubber Company, had it filed its application in the time limited by the statute. That time—if the service of the summons be good—has expired. Yet the effect of this proceeding, as claimed by the complainants, would be to do now what the statute has sought to prevent.

The better rule is that enunciated in the case of Phelps v. Mutual Reserve Association by the Circuit Court of Appeals for the Sixth Circuit, 112 Fed. 453, 50 C. C. A. 339, 61 L. R. A. 717:

"If the Circuit Court of the United States has the power and jurisdiction, when diversity of citizenship exists, to enjoin and dispossess a receiver, acting under authority of the Jefferson circuit court, upon a bill averring a defect of jurisdiction, the other must have an equal right upon a case arising presenting similar jurisdictional questions. The power must be reciprocal, if it exists."

The court then proceeds to entirely approve the language of the court in Senior v. Pierce (C. C.) 31 Fed. 625, viz.:

"The only safe and legitimate course for the suitor is to pursue his remedy by some proper ancillary proceeding in the court first obtaining jurisdiction and take his appeal, if not satisfied, to the final justice of the Supreme Court of the state, or of the United States, as the case may require. * * * But at all events it is infinitely better that injustice should be done and suffered in particular cases than that a course of proceeding should be sustained fraught with all the evils of conflicting judgments and forcible collisions between the two independent jurisdictions."

This case in the Circuit Court of Appeals was confirmed and approved by the Supreme Court of the United States in Mutual Reserve Ass'n v. Phelps, 190 U. S. 147, 23 Sup. Ct. 707, 47 L. Ed. 987.

If the principles declared in these cases be still approved law, they would seem to dispose of the instant application.

Inasmuch as it may appear on hearing on the merits after the testimony is taken that, so far as the Ohio corporation is concerned, it may be entitled to a decree enjoining the enforcement of the judgment in the state court against it, and for other reasons, the motion to dismiss the bill at this time should be refused.

It is accordingly ordered, adjudged, and decreed that the motion for a temporary injunction is refused. It is further ordered that the motion to dismiss the bill of complaint be and the same is refused. Provided, however, that inasmuch as an immediate appeal lies from this order, under section 129 of the Judicial Code of the United States (Comp. St. § 1121), the temporary restraining order hereinbefore granted on October 24, 1921, be, and the same is hereby, continued of full

force. If an appeal be taken in due time, the appellant may move that such restraining order be continued subject to the determination of such appeal. If no appeal be taken in 30 days from the date of this order, the defendant herein may move that such temporary restraining order be discharged.