## MEADE FIBRE CO. v. VARN et al.

(Circuit Court of Appeals, Fourth Circuit. January 17, 1925.)

No. 2302.

**1. Courts ⊗⇒405(3)—Writ of error questioning, not only jurisdiction, but rulings on merits, held properly sued out from Circuit Court of Appeals.**

Writ of error challenging, not only jurisdiction of District Court, but its findings on merits, is properly sued out from Circuit Court of Appeals.

**2. Courts ⊗⇒405(5)—Question of jurisdiction dependent on facts not certified to Supreme Court.**

Where writ of error challenges both jurisdiction and rulings on merits, and jurisdiction depends more on the ascertainment of facts than on varying views of law applicable, question of jurisdiction will not be certified to Supreme Court, but will be passed on as other errors assigned.

**3. Corporations ⊗⇒668(4)—It is competent for state, within lawful bounds, to designate agent on whom process may be served.**

It is competent for state, within lawful bounds, to designate agent on whom process may be served.

**4. Corporations ⊗⇒668(10)—Agency held not such as to render unreasonable holding that service on agent was binding on nonresident corporation.**

Agency of one employed by foreign corporation to make purchases of pulpwood within state and to adjust controversies arising from such purchases *held* not such as to render unreasonable holding that service on such agent was binding on defendant nonresident corporation.

**5. Corporations ⊗⇒668(15)—That agent for nonresident corporation may be found within jurisdiction does not make it suable therein, unless it is there doing business.**

That agent for nonresident corporation may be found within jurisdiction does not make it suable therein, unless it is there doing business.

**6. Corporations ⊗⇒642(4½) — Nonresident corporation, maintaining agents within state to purchase pulpwood, held doing business within state.**

Nonresident corporation, maintaining one or more agents within state to solicit shipments and make purchases of pulpwood, and to adjust controversies arising, and sometimes taking and recording bills of sale within the state, *held* doing business within state.

**7. Contracts ⊗⇒10(4) — Plaintiffs' statement that they "hoped" to be able to make certain shipments held insufficient basis for binding contract to accept such shipments.**

Statement that plaintiffs "hoped" to be able to make certain shipments of pulpwood to defendant at quoted prices is insufficient to constitute a consideration for promise of defendant to accept and pay for named quantity, and alone does not result in binding contract.

**8. Sales ⊗⇒32—Correspondence held sufficient to establish binding contract for purchase of pulpwood.**

Correspondence. *held* sufficient to establish binding contract for purchase of pulpwood.

**9. Appeal and error ⊗⇒1039(13)—Permitting recovery as for breach of contract, rather than as for purchase price of goods sold, but undelivered, held not prejudicial.**

Court's action in permitting recovery on theory that plaintiffs were suing for damages for breach of contract, when complaint indicated that suit was to recover purchase price of goods sold, delivery of which was not accepted, *held* not prejudicial.

In Error to the District Court of the United States for the Eastern District of South Carolina, at Charleston; Ernest F. Cochran, Judge.

Action by W. H. Varn and A. E. Varn, copartners as Varn Bros. & Company, against the Meade Fibre Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

F. B. Grier and M. G. McDonald, both of Greenwood, S. C. (Morison, Kelly &

Penn., of Kingsport, Tenn., Hagood, Rivers & Young, of Charleston, S. C., and Grier, Park & McDonald, of Greenwood, S. C., on the brief), for plaintiff in error.

J. M. Moorer, of Walterboro, S. C. (Padgett & Moorer, of Walterboro, S. C., on the brief), for defendants in error.

Before WOODS, WADDILL, and ROSE, Circuit Judges.

ROSE, Circuit Judge. [1, 2] The parties will be referred to by the positions they had below; that is to say, the plaintiff in error, the Meade Fibre Company, an Ohio corporation, will be called the defendant, and the defendants in error, W. H. and A. E. Varn, each of them a citizen of South Carolina and copartners trading as Varn Bros. & Co., will be styled the plaintiffs. The writ of error challenges, not only the jurisdiction of the court below over the defendant, but many of its rulings in the course of the trial on the merits. It therefore comes within the third rule laid down in United States v. Jahn, 155 U. S. 109, 15 S. Ct. 39, 39 L. Ed. 87, and was properly sued out from this court. Whether jurisdiction existed under the circumstances disclosed by this record depends more upon the ascertainment of the facts than upon varying views of the applicable law. We shall therefore not certify the question of jurisdiction to the Supreme Court, but will pass upon it, as well as upon other errors assigned. Boston & Maine Railroad v. Gokey, 210 U. S. 155, 28 S. Ct. 657, 52 L. Ed. 1002; Weber Bros. v. Grand Lodge, 171 F. 839, 96 C. C. A. 410.

[3] The instant suit was originally brought in a state court in South Carolina and was removed by the defendant to the court below. The only service of process was upon one Johnson as defendant's agent. He is a resident of South Carolina, living at Greenville, in that state. In the transactions out of which this litigation arose, he was defendant's representative; but the defendant says that his authority to act for it had been revoked before this suit was begun. It offers in evidence certain written agreements between him and it in support of this contention. We can only say that Johnson was himself examined in open court as a witness. From what he said on the stand, and from the other testimony he produced, the learned and experienced judge below concluded that, although the defendant and Johnson had gone through the form of executing the agreements referred to, yet in point of fact their actual relations at the time summons to the defendant was served upon him were the same as they had been when he was admittedly acting for it. Under the statutes and decisions of South Carolina, we cannot say that he was not at the material time such an agent as made service upon him binding upon the defendant. "It was competent for the state, keeping within lawful bounds, to designate the agent upon whom process might be served." Commercial Mutual Accident Co. v. Davis, 213 U. S. 245, 254, 29 S. Ct. 445, 447 (53 L. Ed. 782.)

[4-6] The character of Johnson's agency with the defendant was such that there was naught of unreasonableness in holding that service upon him bound the defendant. The mere fact that an agent for a nonresident corporation may be found within the jurisdiction does not make it suable therein, unless it is there doing business, as the defendant says it was not. So far as the record discloses, its activities in South Carolina are confined to procuring some part of its raw material; that is to say, wood pulp. For that purpose it employs one or more agents living in the state to solicit South Carolina farmers and others to make contracts that they will furnish it with specified quantities of such wood. The buyer undertakes to deliver it f. o. b. cars at a South Carolina railroad station convenient to him, and to consign it to the defendant at Kingsport, Tenn. When, because of shortage of cars or of congestion in defendant's receiving yards, the wood brought to the railroad station cannot be promptly shipped, the defendant makes advances on it as it lies at or near the South Carolina siding, and takes and records in that state bills of sale upon it. After controversies had arisen with the plaintiffs and with other persons, who had agreed to furnish defendant with wood, it sent its agents into the state to go upon the lands of the sellers, to see how much wood had been cut, and to interchange views with them as to the settlement of the disputes. Its transactions in South Carolina appear to have been regular, systematic, and fairly numerous.

It is difficult and perhaps impossible to lay down any rules of universal application to determine when a corporation is doing business in a particular jurisdiction of a kind which will make it suable therein. Each case must depend upon its own facts. The International Harvester Co. v. Kentucky, 234 U. S. 579, 583, 34 S. Ct. 944, 58 L. Ed. 1479. Under those here in evi-

dence, we think that the case before us is ruled by the one last cited, and by such decisions as the Commercial Mutual Accident Co. v. Davis, supra, rather than by Rosen-, berg Bros. v. Curtis Brown Co., 260 U. S. 516, 43 S. Ct. 170, 67 L. Ed. 372, and the other similar authorities in which jurisdiction was denied.

The defendant says, even so, it broke no contract, because there has never been a contract for it to break. This contention rests upon the language used by the plaintiffs in a letter to Johnson of the 26th of August, 1920. It was written in response to one from him of the 23d of the same month, telling them what price he could allow for different kinds of pulpwood, and asking them to advise him about how much of each kind they would want to ship, "so I can book you and give you protection." He added that he would guarantee these prices until the 1st of the next July.

[7] In their reply, they said, among other things: "We hope to be able to ship to you between this and July 1, 1921, around 3,000 cords of pulp at price as quoted in your letter; this will probably be most pine." They stated they hoped to commence making shipments in the near future. Defendant says that this letter did not bind the plaintiffs to anything. They promised nothing. The most they did was to express a hope as to what they might do. Such an expression, not enforceable against them, constitutes no consideration for any promise of the defendants, whether expressed or implied, to accept and pay for the named quantity of wood.

Doubtless the defendant would be right, if this letter stood alone and without any evidence as to what both parties understood by the words used; but such is not the case. In his reply two days later, Johnson said he noted that "you will ship us 3,000 cords of pulpwood at prices quoted in my letter of the 23d," and "I will book you for these 3,000 cords, so as to give you protection." On the 10th of September defendants acknowledged the receipt of Johnson's letter of the 28th, and told him of various things they were doing with reference to cutting the wood and arranging for the shipment. They made no objection to his statement that he had booked them for 3,000 cords. Somewhat later the collapse of demand and of prices, which in that year (1920) affected almost all commodities, manifested itself in the pulpwood market as well. The defendant could not sell the paper it had, and did not need wood out

of which to make more. Its available storage place for raw material became overcrowded, and, as it could not unload the cars sent to it, the railroad company, with its consent, or perhaps at its instance, declared an embargo on wood shipments to it.

[8] Afterwards the plaintiffs on December 11th wrote Johnson, reminding him that he had said he had booked them for 3,000 cords. In replying, he merely told them it would be necessary to stop all shipments for an indefinite period, but that, when the embargo was lifted, he would handle what wood the plaintiffs then had cut and ready for shipment. He told them not to cut any more until he was in a position to handle it. He promised to let them know when to begin cutting again. A number of letters subsequently passed to the same general effect, and it was not until months afterwards that either the defendant or Johnson questioned that they had a 3,000-cord contract with the plaintiffs. When the parties repeatedly in writing to each other recognized that the plaintiffs had agreed to sell and deliver, and the defendant to buy and pay for, 3,000 cords of wood, the court cannot say that they did not know what they were talking about. Any ambiguity there may have been in the plaintiff's original letter was cleared by the correspondence which followed.

[9] The only other assignment of error which we think it needful to notice is that the learned court erred as to the measure of damages for the breach alleged in the complaint. Defendant says that the plaintiffs sought to recover for the purchase price of goods sold, and that in that form of action it was incumbent upon them to show that at the time of the breach they were ready and able to deliver the goods sold, whereas the court below allowed them to recover upon the theory that they were suing for damages for the breach of a contract to purchase; that is to say, it permitted them to show that, while they did not have the full 3,000 cords ready for delivery, they would have been able and willing to furnish that quantity, had not defendant's refusal to accept made further expenditure unnecessary, and indeed improper, and to prove the difference between the cost to them of getting the full quantity into condition for delivery and the contract price. It may be said that there was evidence ample to go to the jury that there was no market price at the time and place for delivery. We do not find that any substantial harm could have resulted from the learned court below putting

this construction upon the original complaint, if we were prepared to say it was wrong, as we are not.

A very simple amendment would have made the evidence clearly admissible, and the measure of damages actually applied altogether appropriate. The record satisfies us that failure to amend did not work any surprise on the defendant and did it no harm.

It follows that the judgment below must be affirmed.