## ATLANTIC GREYHOUND LINES, INC., OF WEST VIRGINIA v. METZ.

### No. 3578.

Circuit Court of Appeals, Fourth Circuit.

April 3, 1934.

Horace M. Fox, of Roanoke, Va. (A. L. Hughson, of Roanoke, Va., on the brief), for appellant.

B. A. Davis and S. H. Hoge, both of Roanoke, Va. (Davis, Davis & Davis and Hoge & Austin, all of Roanoke, Va., on the brief), for appellee.

Before PARKER and SOPER, Circuit Judges, and BAKER, District Judge.

PARKER, Circuit Judge.

This action was instituted by plaintiff to recover damages for personal injuries sustained while a passenger on one of defendant's busses, which turned over near Charleston, W. Va. Plaintiff is a citizen and resident of the Western District of Virginia. Defendant is a West Virginia corporation. At the time of her injury plaintiff was traveling on a ticket providing for transportation from Dayton, Ohio, to Roanoke, Va. Within one or two hours after her injury, and while she was at the bus station at Charleston, she was approached by a claim agent of defendant who paid her $25 as reimbursement for damage to clothing and for delay and took from her a release in general terms and on a printed form absolving defendant from all liability on account of the accident. Subsequently plaintiff discovered that she had sustained internal injuries of serious character and instituted this action.

Defendant challenged the jurisdiction of the court by plea in abatement which denied that defendant was doing business in Virginia or that the persons upon whom process was served were its agents. The court below sent the case to the jury on this plea but directed verdict in favor of the plaintiff. Defendant then, in addition to pleading the general issue, relied upon the $25 release obtained by its claim agent; and plaintiff attacked this in a replication charging that it was obtained by fraud and was intended to release defendant only from liability for damage to plaintiff's clothes. The court charged the jury to disregard the release, if they should find that plaintiff signed it under mistake, but that the burden rested upon her to establish such mistake by clear and convincing evidence. There was verdict and judgment for plaintiff and defendant has appealed alleging that the court erred in its ruling on the question of jurisdiction, and also in its instruction with regard to the release.

On the jurisdictional question, we think it was clearly shown that the defendant was present through its agents doing business in the Western District of Virginia and that process was duly served upon it by service upon one of its agents in charge of its business in that district. Defendant was a West Virginia corporation holding a license from West Virginia to operate busses on certain roads of that state to the Virginia line. The Blue & Gray Transit Company was a Virginia corporation holding license from Virginia to operate busses over certain roads of that state. The latter company, however, owned no property. The busses operated over its lines were owned by defendant and were operated from Charleston, W. Va., to Lexington, Va., and vice versa without change of bus or driver. The drivers who operated these busses were paid by defendant. Stations were rented under a contract made by the Atlantic Greyhound Lines "and its subsidiary companies" including defendant and the Blue & Gray Transit Company, which were specially named in the body of the contract; and this contract was signed in the name of "Atlantic Greyhound Lines and/or Subsidiary Companies" by C. B. De-Barry, the traffic manager of defendant. Tickets for travel in Virginia or West Virginia were sold by agents in Virginia, who, after deducting commissions for their services, made remittance to defendant in Charleston. It was testified that defendant was acting as fiscal agent in handling funds for the Blue & Gray Transit Company and certain other affiliated companies; that, after receiving the proceeds of tickets sold, it apportioned to each company its part of the proceeds; and that, in the case of the Blue & Gray Transit Company, it charged that company with a proportionate part of the wages paid drivers and other expenses and also charged it rental for the use of busses. No contract between the two corporations was produced; and the testimony was that the contract for the rental of busses was verbal. The two corporations had a common directorate and the offices of both were at Charleston. The same person was comptroller of both.

On the record before us there can be no doubt that the business done in Virginia under the license of the Blue & Gray Transit Company was actually carried on by the defendant here. We do not mean to say that the Blue & Gray Transit Company was not a distinct corporate entity or that there was any fraud involved in the intercorporate relationship, but that the defendant was the company operating the business not only in West Virginia but also in Virginia. It may be that with respect to operations in Virginia it was acting as agent of the Blue & Gray Company; but this would not alter the fact that it was doing business in that state. The truth seems to be that the only business carried on for the Blue & Gray Company was that done by the defendant and its agents. The Blue & Gray Company held the Virginia

franchise, and was doubtless entitled to the profits realized from operations thereunder; but defendant operated the busses, paid the drivers, and handled the money in Virginia. The business activities of the Blue & Gray seem to have been confined to keeping books in Charleston, W. Va. Theoretically it was doing business in Virginia. Actually the business was done in its behalf by defendant.

The case is entirely unlike such cases as General Investment Co. v. Lake Shore, etc., R. Co., 260 U. S. 261, 43 S. Ct. 106, 67 L. Ed. 244, Philadelphia & R. R. Co. v. McKibbin, 243 U. S. 264, 37 S. Ct. 280, 61 L. Ed. 710, and Peterson v. Chicago, Rock Island & Pacific R. Co., 205 U. S. 364, 27 S. Ct. 513, 51 L. Ed. 841, in which railroad companies were held not to be doing business in a state by reason of the fact that agents of other companies sold through tickets good over their lines. Here the tickets were sold by an agent who remitted the money to the defendant, which was acting as agent for the company holding the local franchise. It is also unlike Cannon Mfg. Co. v. Cudahy Packing Co., 267 U. S. 333, 45 S. Ct. 250, 69 L. Ed. 634, where it was held that a foreign corporation employing a subsidiary domestic corporation as a means of doing business within a state was not to be held on that account to be doing business within the state itself. Here it was not a foreign corporation doing business through a domestic corporation, but a domestic corporation doing business through a foreign corporation. A foreign corporation actually present through its agents and doing business within a state is not, of course, exempted from the jurisdiction because it is acting in behalf of a domestic corporation.

■ Whether a corporation is doing business in a state in such way as to render it subject to the jurisdiction of the courts thereof, depends upon the facts of each particular case. The only general rule deducible from the decisions is that "the business must be of such nature and character as to warrant the inference that the corporation has subjected itself to the local jurisdiction, and is by its duly authorized officers or agents present within the state or district where service is attempted." Consolidated Textile Corporation v. Gregory, 289 U. S. 85, 88, 53 S. Ct. 529, 530, 77 L. Ed. 1047; People's Tobacco Co. v. American Tobacco Co., 246 U. S. 79, 86, 38 S. Ct. 233, 62 L. Ed. 587, Ann. Cas. 1918C, 537; Neely v. Philadelphia Inquirer Co., 61 App. D. C. 334, 62 F.(2d) 873, 874. Under the facts here disclosed, we think there can be no doubt that the defendant had

subjected itself to the jurisdiction of the Virginia courts and by its duly authorized agents was present within the Western District of that state, where service of process was obtained. See Louisville & N. R. Co. v. Chatters, 279 U. S. 320, 49 S. Ct. 329, 73 L. Ed. 711; Bethlehem Motors Corp. v. Flynt, 256 U. S. 421, 41 S. Ct. 571, 65 L. Ed. 1029; International Harvester Co. v. Kentucky, 234 U. S. 579, 34 S. Ct. 944, 58 L. Ed. 1479; St. Louis S. W. R. Co. v. Alexander, 227 U. S. 218, 33 S. Ct. 245, 57 L. Ed. 486, Ann. Cas. 1915B, 77.

■ And there can be no question but that service upon the agent of the corporation in charge of its local business and collecting money which was remitted to it was sufficient. Code of Virginia, § 6064; Conn. Mutual Life Ins. Co. v. Spratley, 172 U. S. 602, 19 S. Ct. 308, 43 L. Ed. 569; Henderson v. Richardson Co. (C. C. A. 4th) 25 F. (2d) 225; Meade Fibre Co. v. Varn (C. C. A. 4th) 3 F.(2d) 520; Firestone Tire & Rubber Co. v. Marlboro Cotton Mills (D. C.) 278 F. 816.

■ It is urged as error that the instruction regarding the release authorized the jury to disregard it upon a finding that plaintiff signed it through mistake, without a finding of mistake or fraudulent misrepresentation on the part of the claim agent who obtained it. We think, however, that any error in this instruction was harmless. The evidence clearly shows that, at the time of the execution of the release, both plaintiff and the claim agent were entirely ignorant of the serious abdominal injuries which plaintiff had sustained, and that the settlement made was intended to cover only the damage to her clothing with compensation for the delay in her journey. While the language of the release was general and broad enough to cover all injuries sustained in the accident, it is well settled that in such cases equity will relieve against such release on the ground that it was executed as a result of mutual mistake. 23 R. C. L. 391, 409; McIsaac v. McMurray, 77 N. H. 466, 93 A. 115, L. R. A. 1916B, 769, and note at page 779; O'Meara v. Haiden, 204 Cal. 354, 268 P. 334, 60 A. L. R. 1381; St. Louis-S. F. R. Co. v. Cauthen, 112 Okl. 256, 241 P. 188, 48 A. L. R. 1447, and note at page 1467 et seq.; Great Northern R. Co. v. Fowler (C. C. A. 9th) 136 F. 118; Blair v. Chicago & A. R. Co., 89 Mo. 383, 1 S. W. 350, 353. As said in the case last cited: "The doctrine is firmly rooted in equity that when an instrument is so general in its terms as to release the

rights of a party of which he was ignorant, and which were not in contemplation of the bargain at the time it was made, the instrument will be restrained to the purposes of the bargain, and the release confined to the right intended to be released. 1 Story, Eq. Jur. § 145; Ramsden v. Hylton, 2 Ves. Sr. 304; Pomeroy v. Benton, 57 Mo. 531; [Powell v. Cobb] 3 Jones' Eq. [56 N. C.] 456."

As plaintiff was clearly entitled to relief in equity against the release, we think that any error in the instruction with regard thereto should be treated as harmless. And defendant has no ground of complaint that what was essentially an equitable issue was submitted to the jury. It raised no objection to this manner of trial, and the case on the equitable issue was fully developed. A judgment should not be reversed, under such circumstances, where the court has reached at law the conclusion which should have been reached in equity. Great American Ins. Co. v. Johnson (C. C. A. 4th) 25 F.(2d) 847; Id. (C. C. A.) 27 F.(2d) 71; Clarksburg Trust Co. v. Commercial Casualty Ins. Co. (C. C. A. 4th) 40 F.(2d) 626, 633; Williams v. Stone (C. C. A. 4th) 25 F. (2d) 588, 589; Liberty Oil Co. v. Condon Nat. Bank, 260 U. S. 235, 43 S. Ct. 118, 67 L. Ed. 232.

For the reasons stated, the judgment appealed from will be affirmed.

Affirmed.